**Olin Mathieson Chemical Corporation, Plaintiff-Counter-Defendant-Appellee, v. Lyle B. Moushon, Defendant-Counter-Plaintiff-Appellant.**

**Gen. No. 10,898.**

Fourth District.

March 25, 1968.

Robert Mehrhoff, of Carrollton, for appellant.

Denby & Dobbs, of Carlinville (Stuart Dobbs, of counsel), for appellee.

CREBS, J.

This action was brought by the plaintiff to recover the balance of an account for explosives sold to the defendant, which account was not contested and judgment was entered thereon against defendant in the amount of $800. Defendant counterclaimed for $10,000 damages alleging improper use or negligence on the part of plaintiff's agents in the furnishing and use of the explosives.

Defendant operated a rock quarry. Plaintiff's agents sold him explosives and prepared and set off a shot. The shot did not break up the rock to the desired extent and defendant was unable to handle most of the rock in his rock crusher. His counterclaim for damages was based on three theories of liability, express warranty, res ipsa negligence and implied warranty. At the trial by the court without a jury, the charges of express warranty and res ipsa negligence were dismissed on motion at the conclusion of counterclaimant's evidence. The case proceeded on the charge of implied warranty and resulted in a finding against counterclaimant. On this appeal counterclaimant alleges error in both of these rulings.

The evidence showed that plaintiff's agents told defendant that their explosive was of good quality, that good results would be obtained and he would be pleased

with the breakage and the whole operation. The trial court held these to be statements of the seller's opinion or sales talk rather than matters of express warranty. We agree with this finding. Ill Rev Stats 1959, c 121½, § 12 (now c 26, § 2.313).

■ It was in evidence that the shot holes were drilled for defendant by another quarry operator. Also, there was a toe, or ledge of rock, extending from the base of the formation. All agreed this toe needed to be and was shot first. The broken rock from the toe was not removed from the main shot and the effect of this rock in the quarry was in dispute. Since these matters were not within the control of counter-defendant res ipsa cannot apply. The quarry was near some high tension power lines and some homes. Because of the possibility of damage to this other property, the shot holes were filled to within five or six feet of the top. There was evidence that the normal procedure is to fill to within two feet of the top of the hole. Defendant testified that he had previously had good results in this quarry. After the shot, it wasn't possible to examine the eighty shot holes, but there was no evidence that any of the explosive had failed to detonate.

On this evidence, we are left to speculate. It could be that the poor results were caused by the powder failing to measure up to an implied warranty of fitness for the purpose intended. It could also be that the poor results were caused by failing to remove the broken rock from the toe and the loading to within five feet of the top. There is even a possibility that the shot holes were improperly drilled or that a difference in the rock formation was the cause.

We have no evidence in this record that anything was wrong with the explosive except by reasoning backward, i. e., the result was poor; therefore, something must

have been wrong with the explosive. In view of the other possibilities this is not enough. Finding no error, judgment is affirmed.

Affirmed.

SMITH, P. J. and TRAPP, J., concur.