REDMAC, INC., Plaintiff-Appellee, v. COMPUTERLAND OF PEORIA, Defendant-Appellant.

Third District   No. 3—85—0244

Opinion filed January 17, 1986.

Richard J. Trinrud, of Bozeman, Neighbour, Patton & Noe, of Moline, for appellant.

John M. Blachinsky, of Kewanee, for appellee.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff, Redmac, Inc., brought this suit against defendant, Computerland of Peoria, to recover the price of a computer and certain auxiliary equipment and software as well as consequential damages. The original complaint for rescission was filed in the circuit court of Henry County on December 15, 1982, and dismissed without prejudice on January 25, 1983. The complaint was subsequently amended to allege in three counts, breach of express warranties (count I), breach of implied warranty of merchantability (count II), and consequential damages for breach of implied warranty of merchantability (count III). Following a bench trial, judgment was entered for plaintiff on count I in the amount of $22,850.33 plus costs, and for defendant on counts II and III. Defendant appeals.

The issues before us are: (1) whether the statements made by defendant's salesman constituted express warranties; and (2) whether plaintiff is barred from revoking his acceptance of the goods by: (a) misusing them; (b) keeping the computer in an improper environment; or (c) returning the goods in a commercially unreasonable manner. We affirm.

The facts generally are not in dispute on appeal and need not be set forth in detail except as needed to explain our dispositions in this appeal. Redmac, Inc., is a Kewanee-based, family corporation formed in March of 1982 for the purpose of providing accounting services. Richard Taylor is its president. Redmac's first customer, it appears, was an automobile dealership owned by Albert Taylor, Richard's brother, and located adjacent to Redmac's offices. Richard Taylor called upon a friend who operated a similar service, Business Systems Management (BSM), and thereby became acquainted with Jack Gramley. Gramley demonstrated BSM's Dynabite Computer system and its Accounting Plus software. Gramley referred Taylor to Computerland

of Peoria and participated in negotiations for Redmac's purchase of a similar Dynabite computer system. Redmac was given a 10% discount on the price of the equipment with the understanding that Redmac would be purchasing its software from Gramley. According to Taylor, Computerland's salesman, Dale Stout, told Taylor that the equipment would be free from defects at the time it was delivered; that if defects were found during the 90-day warranty period Computerland would repair the equipment; and that the Dynabite hardware and operating system would work for a reasonable period of time. Stout also asserted that Redmac was getting a true multi-user system. The transaction was closed on April 30, 1982.

Before the system was installed, however, Taylor overheard disparaging remarks made by Gramley to Stout about Taylor's personality. Taylor promptly notified defendant that he had overheard the remarks and would not be doing business with Gramley. He then wanted to buy his software as well from defendant.

The equipment and some software were delivered and installed by Computerland in Redmac's offices in June 1982. Taylor immediately began to experience problems. Seven repair service trips were made by one of defendant's employees during the warranty period and shortly thereafter. The system still did not function properly. A maintenance contract was discussed in October of 1982, but the terms were not agreed upon. Taylor attempted to rescind the purchase agreement. Finally, in December 1982, Taylor loaded up the system in his pickup truck, hauled it back to Computerland of Peoria and dropped it off on the premises. This lawsuit ensued.

In its appeal, Computerland initially contends that the trial court's finding in favor of Redmac on count I is erroneous as a matter of law because the express warranties alleged by Taylor are mere "puffing," and as such are excluded from the Uniform Commercial Code's (the Code) definition of express warranties (Ill. Rev. Stat. 1983, ch. 26, par. 2—313). As defendant correctly states, in order to be actionable express warranties under the Code, the statements at issue must be affirmations of fact or promises which related to the goods and became part of the basis of the bargain, or descriptions of the goods which were made part of the basis of the bargain.

■ Sales talk which relates only to the value of the goods or the seller's personal opinion or commendation of the goods is considered puffing and is not binding on the seller. No bright-line distinction between express warranties and puffing exists. Whether the issue is one of law or fact may be debatable; however, it is generally considered a question of fact (Ill. Ann. Stat., ch. 26, par. 2—313, Illinois Code Com-

ment, at 218, and Uniform Commercial Code Comment 3, at 219 (Smith-Hurd 1963)), and we perceive of no reason to treat the issue otherwise here.

With these points in mind, we have reviewed the cases cited by defendant in support of its position that the trial court erred. They are all distinguishable. In *Weiss v. Rockwell Manufacturing Co.* (1973), 9 Ill. App. 3d 906, 293 N.E.2d 375, the vendor's purported express warranty concerned advice about how the machinery could be operated safely. The court ruled that such advice concerned a matter about which the salesman would have no more special knowledge than the buyer. In *Olin Mathieson Chemical Corp. v. Moushon* (1968), 93 Ill. App. 2d 280, 235 N.E.2d 263, the seller characterized his product as being of "good quality" and which would produce results that the buyer would be pleased with—obviously statements of the seller's opinion of the value of the goods. See also *Royal Business Machines v. Lorraine Corp.* (7th Cir. 1980), 633 F.2d 34 (seller described goods as being of "high" quality, requiring "few" repairs and from the use of which the buyer could expect "substantial" profits—all of which were the seller's opinions of the goods' value).

■ In contrast to the statements in the foregoing cases, Stout's statements here that the computer system would be "free of defects" upon delivery or be repaired during the manufacturer's warranty period and would "work for a reasonable period of time" cannot be readily classified as mere salesman puffing. Taken together these statements constituted an affirmation of fact that the equipment would be installed so that it would operate properly; and, in the event it did not, Computerland promised to render it operational for a reasonable period of time. Defendant does not argue on appeal that these statements were not part of the basis of the parties' bargain. Clearly, they were.

In our opinion, a situation analogous to the instant case was presented in *Sass v. Spradlin* (1978), 66 Ill. App. 3d 976, 384 N.E.2d 464, wherein the seller described the goods (a truck) as being in "undamaged condition." In fact, the truck's transmission had been assembled in a defective manner such that it was bound to break down. The court on appeal concluded that the seller's statement constituted an express warranty which had been breached, and affirmed a judgment for the plaintiff.

■ Defendant here further resists approval of the trial court's judgment by arguing that Stout's description of the goods as a multiuser system was not proved false. *Ergo,* defendant posits, plaintiff could not rely on that statement to revoke his acceptance of the

goods. The evidence of record supports this argument. However, this aspect does not diminish the effect of the salesman's promises to provide goods free of defects, to render them operational and to keep them operational for a reasonable period of time. The evidence admitted at trial disclosed that, with brief exceptions, the computer system never functioned properly during the six-month period it remained on Redmac's premises. Under the circumstances, we hold that the trial court correctly concluded that the latter statements constituted express warranties, actionable under section 2—313(1) of the Code.

■ We next consider defendant's arguments that, in any event, plaintiff was not entitled to revoke his acceptance of goods under section 2—608 of the Code because he breached his duty by mishandling or misusing the goods or otherwise causing the defects of which he complained. At trial, defendant introduced testimony of its employees that the carpeting surrounding the computer equipment was not adequately treated with antistatic spray, and that Taylor had been told that he should have the equipment resting on antistatic mats. Plaintiff admitted that the recommended mats were not installed until after defendant's machines had been returned to Peoria. Defendant's witnesses also testified that a problem Redmac encountered with missing files and improper page breaks could only occur if Redmac's operator had tampered with the software by giving improper commands. There was no evidence of any attempt by plaintiff to physically enter the computer system. Taylor further denied ever tampering with the hardware or attempting to alter the programs. Expert witnesses were not called by either party to testify regarding the question of what caused the problems plaintiff experienced. Implicit in the trial court's judgment for plaintiff is the finding that defendant failed to prove that plaintiff caused the defects. From our review of the evidence, it cannot be said that such finding is manifestly erroneous. Accordingly, that factual determination will not be disturbed on appeal.

■ Finally, we find no merit in defendant's contention that revocation was not an available remedy to plaintiff inasmuch as he returned the equipment in a commercially unreasonable manner. The testimony relating to how plaintiff angrily dropped or carelessly set the equipment on the floor of defendant's place of business was somewhat equivocal. Furthermore, absolutely no evidence was introduced which would tend to show that the alleged mishandling caused any actual damage to the equipment. The trial court properly rejected this defense.

Having found that the trial court committed no error in granting plaintiff relief on the basis of breach of express warranties, we need

not address plaintiff's theory on appeal of implied warranties as alternative grounds for sustaining the judgment.

For the foregoing reasons, we affirm the judgment of the circuit court of Henry County.

Affirmed.

STOUDER and HEIPLE, JJ., concur.