MacNEIL AUTOMOTIVE PRODUCTS, LIMITED, an Illinois Corporation, Plaintiff,

v.

CANNON AUTOMOTIVE LIMITED, f/k/a Cannon Rubber Limited, Automotive Division, a United Kingdom Company, Defendant.

No. 08 C 139.

United States District Court, N.D. Illinois, Eastern Division.

May 25, 2010.

Robert S. Grabemann, Timothy M. Schaum, Daspin & Aument, Chicago, IL, for Plaintiff.

Adam Oyebanji, James Robert Vogler, Sandra Louise Vasher, Barack Ferrazano Kirschbaum & Nagelberg LLP, Chicago, IL, for Defendant.

## MEMORANDUM OPINION & ORDER

JOAN B. GOTTSCHALL, District Judge.

This case arises from defendant Cannon Automotive Limited's ("Cannon") supply of allegedly defective automobile floor mats to MacNeil Automotive Products, Limited ("MacNeil"), which contracted to supply those mats to automakers Hyundai and BMW. According to MacNeil, Cannon supplied floor mats in which the carpet portion and the rubber portion of the mats did not properly adhere. MacNeil asserts eight causes of action, including breach of contract, breach of warranties, consumer fraud, and conversion. This case is presently before the court on two matters. The first matter is Cannon's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for a more definite statement.[1] Second, the court considers the magistrate judge's report and recommendation denying Cannon's motion to dismiss for MacNeil's alleged spoliation of evidence.

### I. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081

(7th Cir.2008). Legal conclusions, however, are not entitled to any assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A plaintiff generally need not plead particularized facts; Federal Rule of Civil Procedure 8(a)(2) requires that the complaint set forth only "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed. R.Civ.P. 8(a)(2). Still, the factual allegations in the complaint must be sufficient to "state a claim to relief that is plausible on its face...." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

The Seventh Circuit has summarized the requirements of *Twombly, Iqbal,* and other recent precedent as follows:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir.2009). As the Seventh Circuit has recently reiterated, a Rule 12(b)(6) motion generally cannot be based on matters outside the complaint; instead, the court can construe such a motion as one for summary judgment. *See Miller v. Herman*, 600 F.3d 726, 733 (7th Cir.2010).

In addition to moving pursuant to Rule 12(b)(6), Cannon alternatively seeks a

---

1. While Cannon's motion appears to be double-spaced, both its memorandum in support of its motion and its reply have significantly tighter line spacing. All future filings by either party must conform to relevant local rules, including Local Rule 5.2(c), which requires that all papers filed with the court have line spacing of at least 2.0 lines. *See* L.R. 5.2(c).

more definite statement regarding certain matters. Rule 12(e) states, "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed.R.Civ.P. 12(e). "Motions for a more definite statement should not be used to gain additional information, but, particularly in light of our liberal notice pleading requirement, should be granted only when the pleading is so unintelligible that the movant cannot draft a responsive pleading." *Kingsbury Int'l, Ltd. v. Trade The News, Inc.*, No. 08 C 3110, 2008 WL 4853615, at *2 (N.D.Ill. Oct. 28, 2008) (citations and internal quotation marks omitted).

## II. ANALYSIS

Cannon seeks dismissal of each of the eight counts of MacNeil's complaint.

### A. Breach of Contract

■ Cannon seeks dismissal of Count I, MacNeil's breach of contract claim. Specifically, Cannon asserts that MacNeil's allegations are skeletal and muddied with legal conclusions and therefore fail to provide sufficient notice to defendant of MacNeil's claims.

■ This argument is meritless. MacNeil alleges that it and Cannon entered into two contracts by which Cannon agreed to supply floor mats to MacNeil so that MacNeil could supply those floor mats to Hyundai and BMW, and that Cannon breached the contracts by delivering defective floor mats and by failing to deliver adequate floor mats on a timely basis. (Compl. ¶¶ 7–9, 39, 41.) MacNeil further alleges: when the parties entered into the

oral contracts at issue; in what way the supplied floor mats were defective; and which Cannon representatives dealt with MacNeil. While Cannon lists a litany of questions that are not answered by the complaint, notice pleading does not require in-depth factual detail. MacNeil's allegations are sufficient to put Cannon on notice of the claim. For the same reasons, Cannon's alternative motion for a more definite statement is denied; MacNeil's Count I is not so "vague or ambiguous that [Cannon] cannot reasonably be required to frame a responsive pleading." Fed. R.Civ.P. 12(e).

Cannon next argues that MacNeil has pled itself out of court by conceding that it has not paid for some floor mats, *see id.* ¶¶ 48, 49, which is inconsistent with MacNeil's earlier allegation that it fulfilled all terms of the contract, as required under Illinois law. *See Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 64 F.Supp.2d 741, 745 (N.D.Ill.1999).[2] In briefing, MacNeil maintains that its allegations regarding nonpayment to Cannon pertain to a different set of floor mats, which were supplied by Cannon after the floor mats at issue in MacNeil's breach of contract claim. MacNeil may be correct, but its complaint does not adequately differentiate between the different sets of floor mats it describes in its briefs. Because this issue may be clarified on re-pleading, Count I is dismissed without prejudice.

### B. Declaratory Judgment

In Count II, MacNeil requests a declaratory judgment that it is not obligated to pay Cannon for certain outstanding invoices related to Cannon's supply of floor

---

2. MacNeil attaches to its response to Cannon's motion an affidavit which it cites in support of its arguments. That affidavit was not attached to the complaint, and is not referenced therein. Consideration of matters outside the pleadings is generally improper on a Rule 12(b)(6) motion to dismiss, *see Miller*, 600 F.3d at 733, and MacNeil does not indicate why this case is exceptional. The court therefore has not considered that affidavit in resolving the instant motion.

mats. MacNeil alleges that "a dispute exists regarding whether MacNeil is obligated to pay Cannon for certain outstanding invoices relating to Cannon's supply to MacNeil of floor mats ...." (Compl. ¶ 48.) Cannon seeks dismissal on the ground that no case or controversy exists on which to base this claim. Specifically, Cannon claims that this issue was already litigated before a court in the United Kingdom, which entered a default judgment against MacNeil; Cannon attaches a copy of the British judgment to its motion. MacNeil does not dispute that the issue was already litigated in the United Kingdom, but rather argues that it need not pay the amount of the British judgment because it is entitled to set off any amounts that Cannon owes it against the amount of the judgment entered by the British court.

■ Cannon's motion relies on matters outside the complaint, namely, the foreign judgment. Such reliance is generally improper on a motion to dismiss pursuant to Rule 12(b)(6). See Miller, 600 F.3d at 733. However, an exception to the general rule allows the court to consider public records, including foreign judgments, in the context of a Rule 12(b)(6) motion. Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994); see also Gabbanelli Accordions & Imports, L.L.C. v. Ditta Gabbanelli Ubaldo Di Elio Gabbanelli, 575 F.3d 693, 696 (7th Cir.2009) (stating that judicial notice of a foreign judgment is permissible). Even so, Cannon's motion fails because Cannon fails to analyze the applicability of the "case or controversy" requirement to the facts of this case.

■■ For a case or controversy to exist, the matter before the court must be susceptible to an order "of specific relief ... of a conclusive character...." Preiser v. Newkirk, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) (internal citations and quotation marks omitted). Cannon does not discuss this standard or explain why an order providing that MacNeil does not owe the amounts under the invoices due to the setoff (or, for that matter, a determination that MacNeil does owe those amounts) would not provide specific, conclusive relief. The parties' filings in this case make clear that, as a practical matter, there is a very real controversy between MacNeil and Cannon regarding whether MacNeil is obligated to pay Cannon based on the foreign judgment, given that MacNeil contends it is entitled to set off amounts Cannon owes to it against any payments it owes to Cannon. Moreover, it does not appear that the setoff issue has been litigated either in the British court or in the Circuit Court of DuPage County, where Cannon registered the foreign judgment. The court denies Cannon's motion to dismiss with respect to Count II.

## C. Promissory Estoppel

In Count III, MacNeil brings a claim against Cannon for promissory estoppel. Cannon moves for dismissal of Count III on the ground that MacNeil's promissory estoppel and contract claims cannot coexist. MacNeil incorporates its breach of contract allegations, which include the allegation that valid contracts exist between the parties, see Compl. ¶ 39, into its promissory estoppel claim. (Id. ¶ 52.) However, a promissory estoppel claim is premised on the non-existence of a contract. See All–Tech Telecomm., Inc. v. Amway Corp., 174 F.3d 862, 869 (7th Cir.1999). MacNeil offers to re-plead to remove this incorporation, and Cannon, in its reply, does not oppose such leave. Both parties therefore agree to re-pleading, but neither party answers the question of whether alternatively pled contract and promissory estoppel claims can coexist. Amendments should not be allowed when amending would be futile, see Chavez v. Ill. State Police, 251 F.3d 612, 632 (7th Cir.2001), and so the court must determine whether

MacNeil can plead its Counts I and III in the alternative.

The Seventh Circuit has held that where the court finds that an express contract governs the parties' relationship, promissory estoppel is not properly invoked. *See All–Tech Telecomm.*, 174 F.3d at 869; *see also Dumas v. Infinity Broadcasting Corp.*, 416 F.3d 671, 676 (7th Cir. 2005). However, the Seventh Circuit has also stated that "a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir.2003) (interpreting Illinois law). Relying on *Cromeens*, courts in this district have held that, so long as the existence and validity of a contact remain in dispute, quasi-contractual claims, such as promissory estoppel, may still be pled as alternatives. *See Canadian Pac. Ry. Co. v. Williams–Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2005 WL 782698, at \*16 (N.D.Ill. Apr. 6, 2005) (citing *Cromeens* and Illinois law); *see also Shair v. Qatar Islamic Bank*, No. 08 C 1060, 2009 WL 691249, at \*4 (N.D.Ill. Mar. 16, 2009). These holdings are consistent with Federal Rule of Civil Procedure 8(d), which allows a plaintiff to plead alternative and even inconsistent theories. Fed.R.Civ.P. 8(d)(2) & (3).

Here, the court has not made any findings regarding the existence or validity of any contract between MacNeil and Cannon, and Cannon questions whether any contract existed, as is evident from its argument in response to MacNeil's breach of contract claims. Moreover, MacNeil's allegations center on an oral agreement, rather than a readily identifiable written contract. (Compl. ¶ 39.) Because the existence of a contract between MacNeil and Cannon is still in dispute, MacNeil's contract and promissory estoppel claims can coexist. Amendment of MacNeil's Count III would therefore not be futile, and MacNeil is granted leave to re-plead in a manner consistent with this opinion.

## D. Consumer Fraud

In Count IV, MacNeil brings a claim for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.* (the "Consumer Fraud Act"). Cannon seeks dismissal of Count IV, asserting that MacNeil lacks standing to bring a claim under the Consumer Fraud Act, and that MacNeil fails to adequately plead fraud. Any "person," including a corporation, may bring an action for damages suffered as a result of any violation of the Consumer Fraud Act. 815 Ill. Comp. Stat. 505/10a. However, courts have interpreted this cause of action to confer standing on only two groups of "person[s]," namely, "consumers" and persons who, although non-consumers, have suffered damages resulting from conduct that is either directed toward the market or otherwise implicates consumer protection concerns. *See Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436–37 (7th Cir.1996).

A business purchaser, particularly one that resells the products in question, is not a consumer. *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir.2004) (holding that a "business purchaser is not a consumer"); *see also* 815 Ill. Comp. Stat. 505/1(e) (defining "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale ...."). MacNeil sought to resell the floor mats to carmakers and thus is not a consumer. Therefore, MacNeil can state a claim under the Consumer Fraud Act only if it can allege that Cannon's conduct either was directed toward the market or gave rise to consumer protection concerns. MacNeil does not allege that any of Cannon's conduct was directed

toward the market, or toward Hyundai or BMW specifically; rather, MacNeil alleges that Cannon's conduct was directed toward it. Conduct directed only at the non-consumer plaintiff is not directed toward the market generally. *Bank One Milwaukee v. Sanchez,* 336 Ill.App.3d 319, 270 Ill.Dec. 642, 783 N.E.2d 217, 221 (2003).

The remaining question is whether Cannon's conduct implicates consumer protection concerns. Illinois courts have noted that the parameters of conduct implicating consumer protection concerns are not clearly defined. *Id.* However, courts have found that conduct that would confuse or deceive consumers implicates consumer protection concerns. For example, the distribution of misleading pamphlets to consumers about a particular business implicates consumer protection concerns, *see Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.,* 190 Ill.App.3d 524, 137 Ill.Dec. 409, 546 N.E.2d 33, 35–36, 41 (1989), as does the publishing of "sham reviews" of the business. *Zinser v. Rose,* 245 Ill.App.3d 881, 185 Ill.Dec. 574, 614 N.E.2d 1259, 1263 (1993). Similarly, courts in this district interpreting the Consumer Fraud Act have found that conduct that "will confuse and deceive the ultimate consumer" implicates consumer protection concerns. *StunFence, Inc. v. Gallagher Sec. (USA), Inc.,* No. 01 C 9627, 2002 WL 1838128, at *6 (N.D.Ill. Aug. 12, 2002); *Vulcan Golf, LLC v. Google, Inc.,* 552 F.Supp.2d 752, 777 (N.D.Ill.2008).

■ MacNeil does not allege any conduct that would confuse or deceive consumers, but instead alleges that Cannon's defective floor mats harmed consumers. (Compl. ¶ 62.) The Seventh Circuit has noted that, for a non-consumer to have standing under the Consumer Fraud Act based on harm to consumers, the complained-of conduct must "be of sufficient magnitude to be likely to affect the market generally...." *Williams Elecs. Games,* 366 F.3d at 579. Based on MacNeil's allegations, the court cannot conclude that Cannon's alleged conduct was of sufficient magnitude to affect the market, and thus cannot conclude that MacNeil has standing under the Consumer Fraud Act.

■ MacNeil has also failed to satisfactorily plead "unfair and deceptive acts and practices." Claims based on deceptive practices under the Consumer Fraud Act sound in fraud and so, when brought in federal court, must be pled with particularity. *See* Fed.R.Civ.P. 9(b); *see also Davis v. G.N. Mortgage Corp.,* 396 F.3d 869, 883 (7th Cir.2005); *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990) (noting that Rule 9(b) requires that a plaintiff alleging fraud allege "the who, what, when, where, and how" of the fraud).[3] MacNeil states generally that "Cannon has made false statements and misrepresentations," Compl. ¶ 59(a), but does not identify which statements made by Cannon were false, when Cannon made those statements, or who at Cannon made those statements. This general allegation fails to satisfy Rule 9(b)'s particularity requirements.

MacNeil requests leave to re-plead, but has not identified any specific facts that it would re-plead to cure the deficiencies of its current complaint, namely, MacNeil's standing to bring an action under the Consumer Fraud Act, and the particularity of Cannon's alleged fraud. Moreover, the

---

**3.** The Seventh Circuit has held that unfair practices under the Consumer Fraud Act, alleged alone, need only be pled in accordance with Rule 8(a)'s notice pleading standard. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,* 536 F.3d 663, 670 (7th Cir.2008). Here, however, MacNeil alleges acts and practices that are "unfair and deceptive," the latter of which indicates fraud and so must be pled with particularity. (Compl. ¶¶ 60–62.)

original complaint does not contain any allegations which, re-framed by MacNeil, would plausibly suggest fraud. MacNeil's Consumer Fraud Act claim is dismissed.

## E. Warranty Claims

In Counts V through VII, MacNeil alleges that Cannon breached express and implied warranties. Cannon seeks dismissal of all three counts on the ground that MacNeil fails adequately to allege that it gave Cannon notice of the alleged breaches. Cannon also seeks dismissal of each count individually.

### 1. *Notice*

 "In general, buyers such as the instant plaintiff[ ] must directly notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty." *Connick v. Suzuki Motor Co.,* 174 Ill.2d 482, 221 Ill. Dec. 389, 675 N.E.2d 584, 589 (1996). The notice need not "list specific claims of breach of warranty," but must be sufficiently particular to apprise the seller of problems associated with the particular product at issue. *Id.* The buyer need not notify the seller of the breach when the seller has actual knowledge of the deficiency of the particular product. *Id.* In support of its assertion that Cannon had actual knowledge of the problems with the floor mats, MacNeil alleges that Cannon visited MacNeil's facility in Illinois on three occasions regarding the subject floor mats. (Compl. ¶¶ 15, 20, 23.) Cannon asserts that even if it visited MacNeil, the visits did not sufficiently apprise it of the particular products that MacNeil alleges were in breach. Significantly, MacNeil alleges that, during the first visit, "Cannon promised that it would rectify the problems" with the subject floor mats. (*Id.* ¶ 15.) A plausible inference from these allegations is that Cannon knew of the alleged breaches of warranty; presumably Cannon would not, after visiting MacNeil's offices, promise that it would rectify any problems of which it did not have notice or actual knowledge. Cannon's argument that MacNeil fails to allege that it gave notice of the alleged breaches of warranty is therefore rejected.

### 2. *Breach of Express Warranty*

Cannon argues that MacNeil's claim for breach of express warranty also fails because MacNeil has failed to allege that an express warranty existed. MacNeil alleges that Cannon assured MacNeil "that Cannon could manufacture a quality mat with carpet that properly adhered to the mat, that Cannon's mats would meet Mac-Neil's and Hyundai's expectations of quality, and that Cannon's mats would be suitable for their purposes." (*Id.* ¶ 7.)

 "[T]o be actionable under the theory of express warranty the claim must be based on an affirmation of fact or promise which is not a statement representing the seller's opinion or commendation of the goods and which is false." *Weiss v. Rockwell Mfg. Co.,* 9 Ill.App.3d 906, 293 N.E.2d 375, 381 (1973); *see also* 810 Ill. Comp. Stat. 5/2–313. An Illinois appellate court has stated that, to constitute warranties, the representations in question "must be affirmations of fact or promises which related to the goods and became part of the basis of the bargain, or descriptions of the goods which were made part of the basis of the bargain." *Redmac, Inc. v. Computerland of Peoria,* 140 Ill.App.3d 741, 95 Ill.Dec. 159, 489 N.E.2d 380, 382 (1986). The Seventh Circuit has instructed that the "decisive test" in determining whether a representation is a warranty or merely an opinion "is whether the seller asserts a fact of which the buyer is ignorant...." *Royal Bus. Mach., Inc. v. Lorraine Corp.,* 633 F.2d 34, 41, 45 (7th Cir.1980). Reading these cases together, to be a warranty, a representation must be (1) regarding a fact (that is, something that can be proven

false); (2) of which the buyer is ignorant; and (3) that becomes part of the parties' bargain.

Case law further illustrates the line between opinion and fact. One Illinois appellate court found that the seller's statement "that their explosive was of good quality, that good results would be obtained and he would be pleased with the breakage and the whole operation" was "sales talk" and not a warranty. *See Olin Mathieson Chem. Corp. v. Moushon,* 93 Ill.App.2d 280, 235 N.E.2d 263, 264 (1968). The Seventh Circuit, interpreting the identical provision of Indiana's adoption of the Uniform Commercial Code, held that a seller's representations that a machine was "high quality" with "very low" repair rates were non-warranty opinions. *Royal Bus. Mach.,* 633 F.2d at 41, 45. By contrast, an Illinois appellate court held that statements that a product would be "free of defects" and would "work for a reasonable period of time" were more specific factual representations, and therefore warranties. *Redmac,* 95 Ill.Dec. 159, 489 N.E.2d at 383.

■ Based on this authority, Cannon's alleged representations that the floor mats would be "quality mat[s]," "would meet ... expectations of quality," and "would be suitable for their purposes" are not warranties. These vague representations do not assert specific facts of which MacNeil was ignorant, and do not appear to have been bargained for as part of Cannon and MacNeil's negotiations. However, Cannon's alleged representation that the mats would have "carpet that properly adhered to the mat" is more specific. The complaint suggests that Cannon was aware of the manner in which the carpet would adhere to the mat, and that MacNeil was ignorant in that respect. Moreover, according to the complaint, MacNeil was concerned about the mats' adhesiveness, given previous problems with Cannon, and

Cannon made specific representations to MacNeil in response to that concern. In this sense, the adhesiveness of the carpet to the mat allegedly became part of the bargain between Cannon and MacNeil. *Redmac,* 95 Ill.Dec. 159, 489 N.E.2d at 382. Cannon's motion to dismiss MacNeil's Count V is therefore granted in part, but denied as to Cannon's specific alleged representation regarding the carpet-mat adhesion.

### 3. Breach of Implied Warranty of Merchantability

■ In Count VI, MacNeil alleges that Cannon's sale of the subject mats breached the implied warranty of merchantability. Cannon asserts that MacNeil has failed to allege that the subject mats were defective when they left Cannon's control. Cannon is correct that whether the mats were defective when they left its control is an element of MacNeil's claim. *See Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.,* 372 Ill.App.3d 354, 310 Ill.Dec. 10, 865 N.E.2d 334, 341 (2007). However, plaintiff's allegations need give only reasonable notice to the defendant of the nature of plaintiff's cause of action, and, assumed to be true, need demonstrate only that the plaintiff is entitled to relief. *See Brooks,* 578 F.3d at 581; *see also Killingsworth v. HSBC Bank Nev., N.A.,* 507 F.3d 614, 618–19 (7th Cir.2007). Turning to the factual allegations of the complaint, MacNeil alleges that it "received the first shipment of ... mats from Cannon" and that "[u]pon inspection of the first crate of mats, MacNeil found that over 87% of the mats showed major flaws in carpet adhesion and cracked corners in the rubber." (Compl. ¶ 9.) A plausible inference from this allegation, taken to be true, is that the subject mats were defective when they left Cannon's control. MacNeil does not allege any facts suggesting that the mats were altered after leaving Cannon's possession, or that they passed through a third party's

possession before being delivered to Mac-Neil. MacNeil has therefore adequately alleged that the mats were defective at the time they left Cannon's control. Cannon's motion to dismiss Count VI is denied.[4]

#### 4. Breach of Implied Warranty of Fitness for a Particular Purpose

 Cannon also seeks dismissal of Count VII, in which MacNeil alleges that the subject mats breached the implied warranty of fitness for a particular purpose. The Illinois version of the Uniform Commercial Code states:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose.

810 Ill. Comp. Stat. § 5/2–315. As an Illinois appellate court has stated, the above-quoted section "imposes two requirements: first, that the seller know of the particular purpose for which the goods are required, and second, that the buyer rely on [the] seller's skill or judgment in selecting the product." *Siemen v. Alden,* 34 Ill.App.3d 961, 341 N.E.2d 713, 716 (1975). Cannon does not deny that MacNeil's complaint satisfies the first requirement, but argues that MacNeil does not allege facts suggesting that it relied on Cannon's judgment in selecting the floor mats. MacNeil alleges that Cannon made certain representations regarding the adhesiveness of the subject mats, and that MacNeil was eventually dissatisfied with the mats' adhesiveness. (*Id.* ¶¶ 9, 18.) These allegations suggest that MacNeil relied on Cannon's skill and judgment in this

respect. Cannon's motion to dismiss Count VII is denied.

### F. Conversion

 Finally, Cannon seeks dismissal of Count VIII, in which MacNeil brings a claim for conversion. Ultimately, a plaintiff must prove: "(1) his right to the property; (2) that this right includes the absolute, unconditional right to immediate possession of the property; (3) he has demanded possession of the property; and (4) the defendant took control or claimed ownership of the property wrongfully and without authorization." *Edwards v. City of Chi.,* 389 Ill.App.3d 350, 329 Ill.Dec. 59, 905 N.E.2d 897, 899–900 (2009). "The essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held." *Horbach v. Kaczmarek,* 288 F.3d 969, 978 (7th Cir.2002) (citing Illinois law) (internal quotation marks omitted).

 MacNeil alleges that it sent Cannon "compression mold sets," which worked like "waffle iron[s]" to mold the floor mats that Cannon manufactured. (Compl. ¶ 8.) MacNeil also alleges that it had an "immediate" right to the return of the sets, that it demanded the return of the sets, but that Cannon refused. (*See id.* ¶¶ 77–79.) MacNeil's allegations do not explicitly state that its right to possession was absolute and unconditional. However, formulaic recitations of the elements of a cause of action are not necessary, or, for that matter, sufficient, *see Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 763 (7th Cir.2010), and MacNeil's allegations plausibly suggest that its right to repossession of the sets was absolute and unconditional. Moreover, while MacNeil does not specifically allege that Cannon's con-

---

**4.** Cannon also urges in passing that the court should require a more definite statement on MacNeil's Count VI, but does not identify what allegations in Count VI are too ambigu-ous for Cannon to answer. Cannon's alternative motion for a more definite statement on Count VI is denied.

duct in declining to return the mold sets was wrongful, the court can infer as much from MacNeil's allegation that it had an immediate right to possession of the sets, that it requested the return of the sets, and that Cannon declined to return the mold sets. Cannon's motion to dismiss is denied with respect to Count VIII.[5]

## G. Spoliation of Evidence

After filing its Rule 12(b)(6) motion, Cannon filed an additional motion to dismiss based on MacNeil's destruction of the majority of the floor mats at issue in this case. (*See* Doc. No. 91.) On April 15, 2010, the magistrate judge, to whom this matter was referred for purposes of discovery supervision, issued a report and recommendation, recommending the denial of the later motion to dismiss. (*See* Doc. No. 147.) The parties filed no objections to the report and recommendation within the fourteen days permitted by rule. *See* Fed.R.Civ.P. 72(b)(2). Without objections, this court reviews the report and recommendation for clear error. *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir.1999).

Cannon sought dismissal of the complaint as a discovery sanction. *See* Fed. R.Civ.P. 37(c). The Seventh Circuit has instructed that sanctions for spoliation are improper unless, *inter alia*, the party to be sanctioned destroyed the evidence at issue in bad faith and knew or should have known that litigation was imminent. *See Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir.2008).

In this case, the magistrate judge found that there was no evidence that MacNeil destroyed the subject floor mats in bad faith; rather, the only evidence suggested that MacNeil destroyed the subject floor mats due to insufficient storage space. (*See* Doc. No. 147, at 11.) The court also found that MacNeil did not know and should not have known that litigation was likely when it destroyed the mats, because the parties had resolved their previous business disputes short of litigation. (*Id.* at 9–10.) Finally, the court found that Cannon was not prejudiced by MacNeil's failure to preserve all of the mats because MacNeil preserved some mats that it contends are representative of those destroyed, and because photographs show the state of the destroyed floor mats. This court finds no clear error in the magistrate judge's report and recommendation, and consequently adopts it. Cannon's motion to dismiss or, alternatively, to strike MacNeil's *ad damnum* clause is denied.

## III. Conclusion

For the reasons stated above, Cannon's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted in part, and Cannon's motion to dismiss or, alternatively, to strike MacNeil's *ad damnum* clause based on spoliation of evidence is denied. MacNeil is granted fourteen days to file an amended complaint consistent with this opinion.

## REPORT AND RECOMMENDATION[1]

ARLANDER KEYS, United States Magistrate Judge.

To: The Honorable Joan B. Gottschall United States District Judge

---

5. Cannon urges with regard to Count VIII, as it did with regard to Count VI, that MacNeil should be required to plead a more definite statement of its claim. The court has found that MacNeil sufficiently alleges a claim for conversion, and Cannon does not identify any allegations that are so vague or ambiguous

that Cannon cannot file a responsive pleading. Cannon's alternative motion for a more definite statement is denied with respect to Count VIII.

1. The Court is issuing this Report and Recommendation because, while the motion to dis-

This case arises from allegations by Plaintiff that Defendant supplied it with defective floor mats. The vast majority of the mats, however, were disposed of prior to the filing of the instant litigation. Defendant argues that, as a result, it has been denied the opportunity to establish a defense and Plaintiff is unable to prove damages. Consequently, Defendant filed a motion to dismiss or, alternatively, to strike the *ad damnum* clause. For the reasons set forth below, the Court recommends that Defendant's motion be denied.

## Background

Plaintiff MacNeil Automotive Products Limited (MacNeil) is manufacturer and supplier of, *inter alia,* automobile floor mats. In May 2004, it was awarded a contract by Hyundai Motors Corporation (Hyundai) to provide floor mats for Hyundai's crossover automobile, the Tucson. To meet its contractual obligations, Plaintiff entered into an arrangement with Defendant Cannon Automotive Limited (Cannon), also a floor mat producer. This was not the first occasion that the parties had done business with one another; at the time that this agreement arose, they had been doing so for more than fifteen years. The relationship, however, was not without its problems.

Prior to the Hyundai contract, MacNeil complained to Cannon about the quality of mats that it supplied; specifically, the carpet failed to properly adhere to the rubber mat. Plaintiff was assured by Defendant, however, that the Hyundai mats would be free from defects and would meet both Plaintiff's and Hyundai's expectations. Satisfied, MacNeil shipped compression mold sets to Defendant and production of the mats began. In August 2004, the first shipment arrived and, at that time, Plaintiff noticed that greater than 87% were defective—not only were there problems with carpet adhesion, the rubber was also cracked. In response, MacNeil returned samples of the flawed mats, emailed pictures of them, and also demanded that Defendant cure the problem. Because it needed the mats immediately, Plaintiff decided against requesting replacement mats. Rather, it asked Defendant to send a representative to inspect the mats at its facility and to also repair them. Cannon declined to do so. Consequently, MacNeil implemented a "100% Quality Check program" in which its employees inspected each mat and made repairs as needed.

Cannon's Managing Director, Adrian Conway, later conceded that the mats were flawed, and instructed Plaintiff to return them to Defendant at its expense. The source of the problem was discovered and Mr. Conway represented that it would be repaired and/or modified. Despite these assurances, however, the mats continued to be flawed. In February 2005, for example, Plaintiff received a shipment of mats in which 61% were defective. Defendant acknowledged that the mats were flawed and, after inspecting its equipment, assured MacNeil that there would be no further problems with the mats. At the same time, Cannon concluded that Plaintiff's quality control testing procedures, as opposed to Defendant's machinery, were the cause. Plaintiff countered that its processes were reasonable, as the mats would be subjected to similar trials in the hands of the customers.

In subsequent meetings, the parties discussed the defective mats and the resulting delays in delivery. Cannon's representative again assured Plaintiff that the problems would be remedied, in part by modification of its equipment and the rubber pad. But as of September 2005, De-

miss is a dispositive motion, and one in which the Court would ordinarily not issue a Report and Recommendation, the motion to dismiss is based on alleged discovery violations, which matters the district court has referred to this Court.

fendant was still providing defective mats. Though Plaintiff attempted to repair them, they continued to fall short of Hyundai's expectations of quality. Plaintiff again reported the issues to Cannon and also provided photographs in support. In response, Cannon dispatched a representative to Plaintiff's facility and again represented that any flaws in the mats resulted from Plaintiff's testing procedures.

Suffice it to say, Hyundai was not pleased with the mats that it was receiving from MacNeil. In response, it took multiple actions adverse to Plaintiff's interests. In addition to declining to award Plaintiff a multi-million dollar contract to supply all its vehicles with floor mats, Hyundai discontinued the use of mats provided by MacNeil and advised Plaintiff that it had awarded its business to a different manufacturer. As for the defective mats still in its possession, Hyundai demanded that MacNeil either: 1) offer a solution to the adhesion problem or 2) provide replacement mats free of defects. Because Hyundai represented that between 80–100% of the mats were flawed and MacNeil was unable to adequately repair them, Plaintiff offered Hyundai a "one-for-one replacement." It informed Defendant of its decision to replace the mats and, because of the large number of mats (over 18,000 sets), to destroy the flawed ones upon return. It also insisted that Cannon credit it for the loss.

Not only did Plaintiff's business with Hyundai suffer, so, too, did its dealings with BMW; MacNeil also supplied floor mats to BMW, and these were defective as well. But unable to find an alternate supplier, Plaintiff continued using mats supplied by Defendant. However, the business arrangement was eventually terminated. At that time, Plaintiff requested the return of its compression mold sets.

In November 2007, Defendant filed suit against Plaintiff in the United Kingdom for Plaintiff's failure to remit to Defendant sums it argued it was owed. And on January 7, 2008, Plaintiff filed the underlying litigation alleging breach of contract, promissory estoppel, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for particular purpose, and conversion. Additionally, it asked that a declaratory judgment be issued.

## Discussion

Cannon maintains that spoliation of evidence has occurred and that, consequently, it is unable to prepare a defense and MacNeil is unable to prove damages. It argues that the Court can make things right only by dismissing the action or striking Plaintiff's *ad damnum* clause.

A district court, in addition to determining the scope of discovery, has discretion to resolve discovery disputes. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir.1996). The court may sanction spoliation of evidence under Federal Rule of Civil Procedure 37 or its inherent authority. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50–1, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Because the law of Illinois governs the instant matter,[2] Cannon also

---

**2.** Plaintiff is an Illinois corporation and Defendant is a corporation organized under the laws of England and Wales. "It is a long-recognized principle that federal courts sitting in diversity 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, —— U.S. ——, 130 S.Ct. 1431, 1448, 176

L.Ed.2d 311 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)). Accordingly, on July 16, 2009, the district court entered an order holding that the substantive law of Illinois governs the dispute. While drawing a distinction between substance and procedure can be an "incorrigible task," *State Farm Fire & Cas. Co. v.*

maintains that Illinois Supreme Court Rule 219(c) gives the district court further authority to provide the requested relief.

## A. Federal Rule of Civil Procedure 37 and Inherent Authority

Invoking Federal Rule of Civil Procedure 37 and the trial court's inherent powers, Defendant argues that the court should impose sanctions on MacNeil because of its disposal of the floor mats at issue. Plaintiff, in response, contends that the sanctions sought by Defendant are inappropriate.[3] The Court agrees.

 Authority to impose sanctions on a party for spoliation of evidence arises from statutory construction as well as the court's inherent authority. *Chambers*, 501 U.S. at 50–51, 111 S.Ct. 2123. Rule 37 authorizes a court to impose sanctions when a party fails to cooperate in discovery. Specifically, it states that

[i]f a party fails to provide information ... the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard ... may impose ... appropriate sanctions.

Fed.R.Civ.P. 37(c). In determining whether sanctions are appropriate, the Court is guided by whether: 1) there was a duty to preserve the documents; 2) the duty was breached; 3) the culpability for the breach rises to a level of willfulness, bad faith, or fault; 4) Defendant was prejudiced; and 5) an appropriate sanction can ameliorate the prejudice from the breach. *Wells v. Berger*, No. 07 C 3061, 2008 WL 4365972, *6, 2008 U.S. Dist. LEXIS 21608, *18 (N.D.Ill. Mar. 18, 2008) (citing *Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509, *9–10, 2005 U.S. Dist. LEXIS 42131, *29–30 (N.D.Ill. Aug. 18, 2005)). The analysis for the court's inherent authority is essentially the same. *Larson*, 2005 WL 4652509 at *8, 2005 U.S. Dist. LEXIS 42131 at *24 (citing *Webb v. Dist. of Columbia*, 146 F.3d 964, 971 (D.C.Cir.1998); *Danis v. USN Comm.*, No. 98 C 7482, 2000 WL 1694325, *30–31, 2000 U.S. Dist. LEXIS 16900, *93 (N.D.Ill. Oct. 20, 2000)).

### 1. Duty to Preserve Evidence

 "A party has a duty to preserve evidence over which it had control and reasonably knew or could reasonably foresee was material to a potential legal action." *Wells*, 2008 WL 4365972 at *6, 2008 U.S. Dist. LEXIS 21608 at *18 (citing *Wiginton v. CB Richard Ellis*, No. 02 C 6832, 2003 WL 22439865, *4, 2003 U.S. Dist. LEXIS 19128, *12 (N.D.Ill, Oct. 24, 2003)). Though the duty extends "to evidence that [the party] has notice is reason-

---

*Frigidaire*, 146 F.R.D. 160, 162 (N.D.Ill.1992), courts in this circuit generally hold that the issue of whether there exists a pre-suit duty to preserve evidence is substantive in nature and, thus, governed by Illinois law. *See All-state Ins. Co. v. Sunbeam Corp.*, 53 F.3d 804, 806 (7th Cir.1995); *Am. Family Ins. v. Black & Decker (U.S.), Inc.*, No. 3:00cv50281, 2003 WL 22139788, at *1, 2003 U.S. Dist. LEXIS 16245, at *3–4 (N.D.Ill. Sept. 16, 2003) (quoting *Lawrence v. Harley–Davidson Motor Co., Inc.*, No. 99 C 2609, 1999 WL 637172, at *2, 1999 U.S. Dist. LEXIS 12908, at *5 (N.D.Ill. Aug. 11, 1999)); *State Farm*, 146 F.R.D. at 162.

**3.** Additionally, MacNeil maintains that Rule 37 is inapplicable as Illinois law, as opposed to federal law, governs the dispute. The Court disagrees. Indeed, the Seventh Circuit, while acknowledging that state law governs issues that potentially alter the outcome of a diversity action, held that "the federal rules of procedure and evidence always apply in federal litigation, whether or not they determine the outcome." *Allstate Ins. Co.*, 53 F.3d at 806 (7th Cir.1995) (citing *Hanna*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1878, 64 L.Ed.2d 659 (1980)).

ably likely to be the subject of a discovery request," notice need not come in the form of an actual discovery request. *Id.* (quoting *Cohn v. Taco Bell Corp.,* No. 92 C 5852, 1995 WL 519968, *5–6, 1995 U.S. Dist. LEXIS 12645, *14–15 (N.D.Ill. Aug. 29, 2005)). Indeed, it may be given even prior to the filing of a complaint as long as it is known that litigation is likely to commence. *Id.,* at *6–7, 2008 U.S. Dist. LEXIS 21608 at *19 (citing *Cohn,* 1995 WL 519968 at *5–6, 1995 U.S. Dist. LEXIS 12645 at *15).

Defendant argues that Plaintiff knew as early as July 4, 2006, that litigation over the mats was likely. In support of this contention, it relies on an email from Plaintiff's founder that stated, "My guess is that Hyundai may sue MacNeil and also sue Cannon," Despite the possible lawsuit, Defendant maintains, Plaintiff destroyed the mats. Consequently, it contends that Plaintiff had a duty to preserve the evidence and it breached that duty. The Court disagrees.

As an initial matter, the Court declines to decide whether Plaintiff's knowledge of prospective litigation with Hyundai, a third party to the current litigation, satisfies the requirement as expressed in *Wells.* Indeed, this issue can be disposed of without, making this determination, as Plaintiff took remedial actions (the one-for-one replacement of the floor mats) to ensure that the litigation did not come to be. As a result, legal action, if ever a possibility, was foreclosed. This, therefore, is not grounds on which Cannon can argue that Plaintiff had a duty to preserve the mats.

Nor is the Court convinced that MacNeil should have known that litigation between itself and Cannon was probable. Defendant had supplied defective mats to Plaintiff on occasions prior to those involving the Hyundai and BMW mats, but legal proceedings never resulted—the parties were able to resolve the disputes among themselves. And even after the disagreement involving the Hyundai mats, the parties continued their business relationship for at least a year. During this time, Plaintiff sought to resolve the dispute without court intervention. It was entirely reasonable for Plaintiff to believe that Defendant would remedy the problem, thus negating the need for judicial involvement; indeed, Defendant had, on prior occasions, acknowledged the issues and committed itself to doing just that. Further, the Court believes that, had litigation truly been likely, Defendant would have, at the very least, inspected the mats for defects, as a means of defending itself in any resulting lawsuit. Cannon, as will be discussed *infra,* did nothing. Without more, it cannot be said that Plaintiff had notice of possible litigation. The Court, therefore, declines to find that Plaintiff had a duty to preserve the mats,

### 2. Culpability for the Breach

In the context of Rule 37, willfulness and bad faith are associated with intentional or reckless conduct. *Long v. Steepro,* 213 F.3d 983, 987 (7th Cir.2000). Bad faith is not only the intentional destruction of evidence but "destruction for the purpose of hiding adverse information." *Mathis v. John Morden Buick, Inc.,* 136 F.3d 1153, 1155 (7th Cir.1998). "The crucial element is not that evidence was destroyed but rather the reason for the destruction." *Faas v. Sears, Roebuck & Co.,* 532 F.3d 633, 644 (7th Cir., 2008) (quoting *Park v. City of Chicago,* 297 F.3d 606, 616 (7th Cir.2002)). Further, fault has been interpreted to mean that a party acted in an objectively unreasonable manner. *Long,* 213 F.3d at 987.

That the mats were destroyed knowingly and intentionally, there is no doubt. Plaintiff concedes as much. The Court, however, is unable to say that in destroy-

ing the mats, Plaintiff did so in bad faith. MacNeil stated that it destroyed the mats because it simply did not have the space to store them. There were approximately 18,000 defective mat sets that occupied 240 pallets. Viewing the evidence in the light most favorable to Plaintiff, which the Court is required to do at this stage of the proceedings, the Court finds that Plaintiff lacked the space to store the mats and destroyed them as a result. Not because the mats were potentially damaging to them, This conclusion is bolstered by the fact that Plaintiff extended numerous invitations to Defendant to come inspect the mats and aid in their disposal. It is likely that had Plaintiff been attempting to protect itself against, liability, it would have destroyed the mats without said notice. For these same reasons, the Court is unable to find that. Plaintiff's conduct satisfied the fault element. In other words, Plaintiff did not act in an unreasonable manner.

Considering that Cannon was notified that the mats were to be destroyed, but failed to take any action whatsoever, Defendant cannot now argue that Plaintiff should have continued to store the mats. Allowing Defendant to do so would potentially encourage other litigants to act in a similar manner, with hopes that the evidence would be discarded by the opposing party to that party's detriment and they, in turn, would emerge as the victor. This is certainly not a result that the Court requires. Consequently, the Court finds that, though willful, Plaintiff's disposal was not done in bad faith and was reasonable.

### 3. Prejudice

To determine that Defendant has been prejudiced by Plaintiff's failure to preserve the mats, the Court must consider the appropriateness of the evidence available. Though Plaintiff no longer possesses all 18,000 of the allegedly defective mat sets, it did maintain mats that it contends are representative of those that were destroyed. Consequently, the Court cannot say that Defendant will necessarily be prejudiced by the absence of the disposed mats. Defendant relies heavily on product liability case law in support of its position that all mats are required. Its reliance, however, is misplaced. In those cases, there was a single product alleged to have been defective, and it was destroyed. This is not the case here. Plaintiff maintained mats that it argues are representative of the whole lot. In contravention of cases cited by Defendant, therefore, the allegedly defective product is present and can be used to make a determination that the mats were or were not defective.

The Court notes that photographs were also taken. This is not a case where the plaintiff is alleging that a car or equipment functioned improperly, in which case photographs would in all likelihood, prove useless. The defects alleged by Plaintiff are cosmetic in nature and would, therefore, be visible and apparent on photographs. Further, the cases relied on by Defendant are also readily distinguishable from the instant case because in each, the party seeking sanctions was not provided notice prior to the destruction of the product at issue. *See Allstate*, 53 F.3d at 805, 807; *Lawrence*, 1999 WL 637172 at *1, 1999 U.S. Dist. LEXIS 12908 at *2; *Thomas v. Bombardier–Rotax Motorenfabrick*, 909 F.Supp. 585, 587 (N.D.Ill.1996); *State Farm*, 146 F.R.D. at 161, 163.

The remedies sought by Cannon are harsh, and the Court is not convinced that they are warranted. In light of the Court's finding regarding the role played by Defendant, it cannot say that Cannon was prejudiced and that the sanctions sought by Defendant would adequately remedy the problem. Therefore, the Court recommends that the district court

803

decline to impose sanctions pursuant to either Rule 37 or its inherent authority.

## B. Illinois Supreme Court Rule 219(c)

Illinois Supreme Court Rule 219(c) authorizes a court to impose sanctions, including dismissal of the cause of action, upon a party who unreasonably refuses to comply with any provisions of a court's discovery rules or any other entered pursuant to those rules. Ill. S.Ct. R., 219. Whether to impose a sanction under Rule 219(c) is within the court's discretion and is decided on a case-by-case basis. *Iowa Ham Canning v. Handtmann*, 870 F.Supp. 238, 243 (N.D.Ill.1994).

Plaintiff argues that the mats were destroyed prior to the filing of the instant litigation. Because the trial court had not entered any order prohibiting the destruction of the evidence, it maintains that Rule 219 does not apply. The Court disagrees, Illinois courts have routinely imposed sanctions on parties that destroyed evidence prior to the filing of the lawsuit, and thus, before entry of a protective order by the court. *See Shelbyville Mut. Ins. Co. v. Sunbeam Leisure Prods. Co.*, 262 Ill. App.3d 636, 199 Ill.Dec. 965, 634 N.E.2d 1319 (Ill.App. Ct 1994); *Am. Family Ins. Co. v. Village Pontiac–GMC, Inc.*, 223 Ill. App.3d 624, 166 Ill.Dec. 93, 585 N.E.2d 1115 (Ill.App.Ct.1992). This, therefore, is not a proper basis by which to dispose of Defendant's argument. The Court notes, however, that the elements necessary to make a case for spoliation under Rule 219 are similar to those required to be shown pursuant to Rule 37. *See Lekkas v. Mitsubishi Motors Corp.*, No. 97 C 6070, 2002 WL 31163722, *3, 2002 U.S. Dist. LEXIS 18390, *9 (N.D.Ill. Sept. 25, 2002) (finding that a defendant seeking sanctions for spoliation must show: 1) at the time of the product's destruction, litigation was anticipated, and 2) the unavailability of the evidence prejudices the defendant.) In light of the Court's earlier rulings, specifically,

that Plaintiff did not have notice that litigation was likely, and that Defendant is not prejudiced, the Court recommends that the district court not impose sanctions pursuant to Rule 219.

### Conclusion

For the reasons set forth above, the Court recommends that the district court deny Defendant's motion to dismiss, or in the alternative, strike the *ad damnum* clause.

4/15/2010