Filed 12/22/22
*See dissenting opinion*

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| VICTOR VALLEY UNION HIGH SCHOOL DISTRICT, Petitioner, v. THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, Respondent; JOHN DOE, Real Party in Interest. | E078673 (Super.Ct.No. CIVDS1908673) OPINION |


ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Wilfred J. Schneider, Jr., Judge.  Granted.

Cummings, McClorey, Davis, Acho & Associates and Ryan D. Miller for Petitioner.

No appearance for Respondent.

Carrillo Law Firm, Luis A. Carrillo, Michael S. Carrillo, J. Miguel Flores; The Senators (Ret.) Firm, Ronald T. Labriola; Esner, Chang & Boyer, Holly N. Boyer, Shea S. Murphy and Kathleen J. Becket for Real Party in Interest.

1

John MM. Doe, by and through his guardian ad litem, C.M. (Doe's mother), and B.S. (Doe's father) (collectively real parties in interest), sued petitioner Victor Valley Union High School District (the district) for negligence and other causes of action arising from an alleged sexual assault on Doe while he was a high school student. During discovery, real parties in interest learned video that captured some of the events surrounding the alleged sexual assault had been erased.

Real parties in interest moved the superior court for terminating sanctions or, in the alternative, evidentiary and issue sanctions against the district under Code of Civil Procedure section 2023.030.[1] The trial court concluded the erasure of the video was the result of negligence, and not intentional wrongdoing, and denied the request for terminating sanctions. However, the court granted the request for evidentiary, issue, and monetary sanctions because it concluded that, even before the lawsuit was filed, the district should have reasonably anticipated the alleged sexual assault would result in litigation and, therefore, the district was under a duty to preserve all relevant evidence including the video.

In this original proceeding, the district argues the trial court applied the wrong legal standard when it ruled the district had the duty to preserve the video before it was erased and, therefore, that the district was not shielded from sanctions by the safe-harbor provision of section 2023.030, subdivision (f) (hereafter § 2023.030(f)). We stayed the proceedings in the trial court and subsequently issued an order to show cause. After

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

considering real parties in interest's opposition to the petition and the district's reply, we now grant the petition and direct the trial court to vacate its sanctions order and reconsider its ruling.

As explained *post*, we hold the safe-harbor provision of section 2023.030(f) shields a party from sanctions for the spoliation of electronic evidence only if the evidence was altered or destroyed when the party was not under a duty to preserve the evidence, and the duty to preserve relevant evidence is triggered when the party is objectively on notice that litigation is reasonably foreseeable, meaning litigation is probable and likely to arise from an incident or dispute and not a mere possibility. Although the trial court used some language in its order that seems to indicate the court believed the duty to preserve evidence arises when litigation is a mere possibility, the court nonetheless appears to have applied the reasonably foreseeable standard advanced by the district in its opposition to the sanctions motion. However, we conclude the extant record does not support the trial court's ruling that, at the time the video was erased, the district was on notice that litigation about Doe's alleged sexual assault was reasonably foreseeable.

## I.

## FACTS AND PROCEDURAL BACKGROUND

In their complaint, real parties in interest alleged Doe was a minor and a student enrolled in classes at one of the district's high schools. Doe required constant adult supervision in or outside the classroom. School personnel had reassured Doe's father that

3

Doe would not be allowed to move freely around the campus unsupervised "because of his susceptibility to suggestion and [because he] might wander anywhere with anyone."

Real parties in interest alleged that, on or about March 8, 2019, two male students took Doe, who was not supervised by an adult at the time, to a bathroom where they sexually assaulted him. Real parties in interest alleged the same two students had sexually assaulted Doe on five or six prior occasions, and they threatened Doe that if he told anyone what had happened or if he resisted inappropriate sexual advances "something bad would happen to him." They also alleged, "the incident of the boys entering into the bathroom to abuse [Doe] was video-recorded." Real parties in interest alleged the sexual assault was the result of the district's breach of its duty to protect and supervise Doe while on school grounds. The complaint stated causes of action for negligence and sexual harassment by Doe and a cause of action for negligent infliction of emotional distress by Doe's mother and father.[2]

When the high school's assistant principal was informed of the alleged incident, he and a security officer reviewed video footage for March 5, 6, and 7, 2018, from cameras positioned in the lunchroom. According to the assistant principal, the video footage for March 7 showed Doe seated next to another student in the lunchroom. The other student made a gesture with his hand, Doe nodded, and the two got up from the lunch table and walked toward the locked bathroom. When a third student walked out of

---

[2] The trial court subsequently granted judgment on the pleadings for the district and dismissed the cause of action for sexual harassment without leave to amend, and the court granted a request from real parties in interest to dismiss their cause of action for negligent infliction of emotional distress.

the bathroom, Doe and the other student entered the bathroom. They were inside the bathroom for about four minutes. A classroom aid, who did not know the boys were inside the bathroom, escorted another student to the bathroom. Doe and the other student then exited the bathroom and lined up with the rest of the class for physical education.

On March 21, 2018, the assistant principal wrote a half-page narrative report about the incident and forwarded it to the district's risk manager. The assistant principal did not save the March 7 video footage from the lunchroom because he assumed the school security officer had done so or would do so. The video was automatically erased 14 days after the alleged assault.

On September 5, 2018, real parties in interest submitted a government claim for damages to the district.

In their sanctions motion, real parties in interest argued that, because witnesses no longer remembered details of the incident or precisely what the video depicted, real parties in interest were "left with only a limited account" of what had taken place and they were "severely prejudiced" in their ability to develop their case. They argued the trial court should impose a terminating sanction under section 2023.030 by striking the district's answer and entering a default judgment because: (1) the district knew the importance of preserving the video; (2) the district's failure to preserve the video proved they had intentionally destroyed evidence; and (3) real parties in interest were prejudiced by the loss of crucial evidence. In the alternative, real parties in interest requested the trial court impose issue and evidence sanctions that essentially precluded the district from

5

proving it did not act negligently and/or that Doe was contributorily negligent. In addition, they requested monetary sanctions in the amount of $7,060.

In its opposition, the district argued the trial court should deny the motion in its entirety. According to the district, it was shielded from any sanctions for the routine and good faith erasure of the video, under the safe-harbor provision of section 2023.030(f), because it was not under a duty to preserve evidence at the time of the erasure. Relying primarily on federal caselaw on the spoliation of evidence, the district argued a duty to preserve evidence that might be relevant in future litigation does not arise until litigation is reasonably foreseeable, meaning it is probable and not merely a possibility. The district argued that, when the video was erased, a lawsuit from Doe was a mere possibility.

In reply, real parties in interest argued the district did reasonably anticipate that litigation would arise from the incident, that the safe-harbor provision of section 2023.303(f) did not apply, and that the district's intentional destruction of crucial evidence warranted imposition of discovery sanctions.

At the hearing on the motion, counsel for the district argued the motion should be denied because Doe's lawsuit was not probable when the video was erased. Counsel argued there was no evidence the district had "any notice there was going to be litigation," and the record did not show the district "had actual knowledge that it was probable litigation would be pending." Counsel for real parties in interest argued that, based on its practice of saving video footage for law enforcement investigations, the district was on

notice of potential litigation.  In addition, they argued the district was under a statutory duty to preserve the video.

In its written order dated February 23, 2022, the trial court ruled that the assistant principal (and, therefore, the district) knew the video would be important evidence "if any further investigation, or eventual investigation, arose from the incident."  Based solely on the district's special relationship with Doe and its attendant duty of care toward him, the court ruled the district "had a duty to preserve the video footage."  The court found that, as early as March 9, 2018, the day Doe's father was informed of the alleged sexual assault, "it was reasonably foreseeable the incident might result in litigation because of School's special duty to Doe."  Therefore, the court implicitly rejected the district's assertion that it was shielded from sanctions by the safe-harbor provision of section 2023.030(f).

However, the court ruled the erasure of the video was "a negligent act due to a lack of due diligence" and not an "intentional act," so the court denied real parties in interest's request for terminating sanctions.  Instead, the trial court imposed on the district issue and evidence sanctions (set forth in toto in the margin) that essentially precluded the

district from defending against the remaining cause of action for negligence.[3]  Finally, the court imposed monetary sanctions in the amount of $4,260.

On March 14, 2022, the district filed, in this court, a petition for writ of mandate and/or prohibition and requested an immediate stay of the proceedings in the trial court. On March 25, we issued a stay of the proceedings and invited real parties in interest to file a response.  Real parties in interest filed their response on April 21, and on May 2 we issued an order to show cause why the petition should not be granted.  The district filed its traverse on May 12, 2022.

## II.

## DISCUSSION

### A.     *Standard of Review*.

Orders imposing discovery sanctions are reviewed for abuse of discretion.

(*Cornerstone Realty Advisors*, *LLC v. Summit Healthcare REIT*, *Inc.* (2020)

---

[3]  The issue sanctions were as follows:  "1. District's employees were negligent in supervising . . . students in the School's cafeteria during lunch.  [¶]  2. District and its employees did not comply with the policies and procedures for the supervision of . . . students during lunch in the cafeteria.  [¶]  3. Doe was not responsible for, and did not contribute to, his alleged harm. [¶]  4. District negligently allowed the destruction of video surveillance footage of the moments immediately before and after the March 8, 2018 incident, despite having knowledge that the video evidence was relevant and needed to be preserved as evidence in potential litigation that was reasonably foreseeable."

The evidence sanctions were as follows:  "1. District is precluded from offering any evidence or argument that it did not have knowledge that School's restrooms were being used for sexual assaults by . . . students. [¶]  2. District is precluded from offering any evidence, argument, or cross-examination that Doe was comparatively at fault for the subject incident. [¶] 3. District is precluded from offering any evidence, argument, or cross-examination that it complied with its policies and procedures relating to the supervision of students."

8

56 Cal.App.5th 771, 789.)  "'"We view the entire record in the light most favorable to the court's ruling, and draw all reasonable inferences in support of it.  [Citation.]  . . . .  The trial court's decision will be reversed only "for manifest abuse exceeding the bounds of reason."'"  (*Sabetian v. Exxon Mobile Corp.* (2020) 57 Cal.App.5th 1054, 1084.)  A sanctions order exceeds the bounds of reason when the trial court acted in an "arbitrary, capricious, or whimsical" fashion.  (*Van v. LanguageLine Solutions* (2017) 8 Cal.App.5th 73, 80.)

The trial court's findings of fact that underlie a discovery sanction are reviewed for substantial evidence.  (*Los Defensores*, *Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 390-391.)  "In this regard, 'the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination [of the trier of fact].'"  (*Ibid*.)

And, "[t]o the extent that reviewing the sanction order requires us to construe the applicable discovery statutes, we do so de novo, without regard to the trial court's ruling or reasoning."  (*Sinaiko Healthcare Consulting*, *Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 401.)

9

*B.    A Trial Court May Impose Sanctions for the Spoliation of Electronically Stored Information If It Was Lost or Destroyed After the Party To Be Sanctioned Was Under a Duty To Preserve the Evidence Because It Was Relevant To Reasonably Foreseeable Future Litigation, Meaning Litigation That Was Probable or Likely To Arise.*

Determining whether the trial court abused its discretion when it imposed the discovery sanctions in this case requires us to interpret the safe-harbor provision of section 2023.030(f).  "'""The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.  [Citation.]  'We begin by examining the statutory language, giving the words their usual and ordinary meaning.  [Citation.]  If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.  [Citation.]  If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.  [Citation.]  In such circumstances, we "'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.'""""  (*Carrasco v. State Personnel Board* (2021) 70 Cal.App.5th 117, 139.)

For the following reasons, we hold the safe-harbor provision of section 2023.030(f) insulates a party from discovery sanctions for the material alteration or destruction of electronically stored information if the evidence was lost before the party had a duty to

preserve it.  The duty to preserve evidence arises when the party in possession and/or control of the electronically stored information was objectively aware the evidence was relevant to reasonably foreseeable future litigation, meaning the future litigation was probable or likely to arise from an event, and not merely when litigation was a remote possibility.

> *1.      The plain language of section 2023.030(f) tethers the application of the safe-harbor provision to the loss of evidence before the party to be sanctioned had a duty to preserve it.*

Section 2023.030 provides that a trial court may impose monetary and/or nonmonetary sanctions on a party or the party's attorney for "misuse of the discovery process."[4]  "Among other forms of sanctions, the court may 'impose an issue sanction by an order prohibiting any party engaging in the misuse of the discovery process from supporting or opposing designated claims or defenses.'  ([§ 2023.030], subd. (b).)  The court may also prohibit the party from introducing designated matters in evidence.  (*Id.*, subd. (c).)"  (*Aghaian v. Minassian* (2021) 64 Cal.App.5th 603, 618; see *New Albertson's*, *Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1422.)  And, in extreme cases, the trial court may issue terminating or contempt sanctions.  (§ 2023.030, subds. (d), (e).)

---

[4] Section 2023.010 provides a "nonexhaustive list" of conduct that constitutes a "'misuse of the discovery process.'"  (*Kwan Software Engineering*, *Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 74.)

One serious form of discovery abuse is the spoliation of evidence, which is defined as the destruction or alteration of relevant evidence or the failure to preserve evidence for another party's use in pending or future litigation. (*Strong v. State of California* (2011) 201 Cal.App.4th 1439, 1458; *Reeves v. MV Transportation*, *Inc.* (2010) 186 Cal.App.4th 666, 681; *Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1223.) "No one doubts that the intentional destruction of evidence should be condemned. Destroying evidence can destroy fairness and justice, for it increases the risk of an erroneous decision on the merits of the underlying cause of action. Destroying evidence can also increase the costs of litigation as parties attempt to reconstruct the destroyed evidence or to develop other evidence, which may be less accessible, less persuasive, or both." (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 8 [holding Cal. does not recognize a common law cause of action for the spoliation of evidence].)

"Chief among" the nontort remedies for the spoliation of evidence "is the evidentiary inference that evidence which one party has destroyed or rendered unavailable was unfavorable to that party." (*Cedars-Sinai Medical Center v. Superior Court*, *supra*, 18 Cal.4th at p. 11.) In addition, "[d]estroying evidence in response to a discovery request after litigation has commenced would surely be a misuse of discovery within the meaning of [former] section 2023, as would such destruction in anticipation of a discovery request," and the available sanctions to remedy that abuse include such "potent" measures as "monetary sanctions, contempt sanctions, issue sanctions ordering that designated facts be taken as established or precluding the offending party from supporting or opposing designated claims or defenses, evidence sanctions prohibiting the

offending party from introducing designated matters into evidence, and terminating

sanctions that include striking part or all of the pleadings, dismissing part or all of the

action, or granting a default judgment against the offending party." (*Cedars-Sinai*, at

p. 12.)

The safe-harbor provision of section 2023.030(f) specifically addresses when a

trial court is authorized to impose sanctions for the spoliation of "electronically stored

information"[5] (ESI). "Notwithstanding subdivision (a), or any other section of this title,

absent exceptional circumstances, the court shall not impose sanctions on a party or any

attorney of a party for failure to provide electronically stored information that has been

lost, damaged, altered, or overwritten as the result of the routine, good faith operation of

an electronic information system." (§ 2023.030(f)(1).) Finally, section 2023.030(f)(2)

provides: "This subdivision shall not be construed to alter any obligation to preserve

discoverable information."

What constitutes alteration or destruction of ESI during the "routine, good faith"

operation of an electronic storage system is clearly tethered to whether the party in

possession of and/or control of the information was under an "obligation to preserve

discoverable information" at the time the information was altered or destroyed.

(§ 2023.030(f)(1), (2).) However, the statute does not define *when* a party is under such

---

[5] "'Electronically stored information' means information that is stored in an electronic medium." (§ 2016.020, subd. (e).) "'Electronic' means relating to technology having electrical, digital, magnetic, wireless optical, electromagnetic, or similar capabilities." (*Id*., subd. (d).)

an obligation to preserve information and, instead, expresses an intent not to "alter" such an obligation that may independently exist. (*Ibid*.)

   2. *The relevant legislative history demonstrates the safe-harbor provision of section 2023.030(f) was not intended to relieve a party of its duty to preserve evidence when future litigation is reasonably anticipated.*

  Although section 2023.030(f) is silent about when a duty to preserve ESI arises, its legislative history provides some guidance.[6] Section 2023.030 was enacted in 2004 as part of the Civil Discovery Act. (§ 2016.010 et seq., as added by Stats. 2004, ch. 182, § 23.) The Civil Discovery Act did not, however, "expressly address issues relating to the discovery of electronically stored information." (Jud. Council of Cal., Rep. on Electronic Discovery: Proposed Legislation (Apr. 16, 2008) p. 1.)[7] In a report submitted to the Legislature, the Judicial Council of California proposed legislation to "modernize the Code of Civil Procedure to reflect the growing importance of discovery of electronically stored information." (*Id*. at p. 3.)

  Relevant here, the Judicial Council's report addressed the "important issue . . . of whether sanctions should be imposed on a party that fails to produce electronically stored information that has been lost, damaged, altered, or overwritten because of the routine,

---

  **6** Although the parties to this proceeding have discussed some of the legislative history materials recounted in this opinion, neither party has moved that we take judicial notice of those materials. (See Cal. Rules of Court, rules 8.252(a), 8.485(a).) We do so now on our own motion. (Evid. Code, §§ 452, 459; *PGA West Residential Assn.*, *Inc. v. Hulven Internat.*, *Inc.* (2017) 14 Cal.App.5th 156, 174, fn. 11.)

  **7** Available at <https://www.courts.ca.gov/documents/042508item4.pdf> (as of Dec. 22, 2022).

good faith operation of an electronic information system." (Jud. Council of Cal., Rep. on Electronic Discovery: Proposed Legislation, *supra*, at p. 8.) It recommended the Legislature "add new 'safe harbor' provisions to several sanctions statutes, stating: 'absent exceptional circumstances, the court shall not impose sanctions on a party or its attorneys for failure to provide electronically stored information lost, damaged, altered, or overwritten as a result of the routine, good-faith operation of an electronic information system.'" (*Ibid.*) In addition, the report recommended that, "after each of the new 'safe harbor" provisions described above, the following sentence would be added: 'This subdivision shall not be construed to alter any obligation to preserve discoverable information.'" (*Ibid.*)

In 2009, the Legislature enacted the Electronic Discovery Act, which "largely implement[ed]" the Judicial Council's recommendations. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 5 (2009-2010 Reg. Sess.) June 9, 2009, p. 1.)[8] The act was designed to "'eliminate uncertainty and confusion regarding the discovery of electronically stored information, and thereby minimize unnecessary and costly litigation that adversely impacts access to the courts.' (Stats 2009, ch. 5, § 23.) The act added several provisions to the Code of Civil Procedure to integrate . . . (ESI) into the discovery law . . . ." (*Park v. Law Offices of Tracey Buck-Walsh* (2021) 73 Cal.App.5th 179, 188.) Like the Judicial Council, the Legislature was concerned with a "distinctive feature of electronic information systems," to wit, "the routine modification, overwriting, and

---

[8] Available at <http://www.leginfo.ca.gov/pub/09-10/bill/asm/ab_0001-0050/ab_5_cfa_20090608_120938_sen_comm.html> (as of Dec. 22, 2022).

deletion of information which accompanies normal use." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 5, *supra*, June 9, 2009, p. 10.) To address that specific concern, the Electronic Discovery Act enacted the recommended safe-harbor provision. (*Ibid*.)

The legislative history of the Electronic Discovery Act demonstrates the safe-harbor provisions were not intended to "relieve parties of their obligations to preserve discoverable information. When a party is under a duty to preserve information *because of pending or reasonably anticipated litigation*, a party would still be required to modify or suspend features of the routine operation of a computer system to prevent loss of information." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 5, *supra*, June 9, 2009, p. 10, italics added.)

The Electronic Discovery Act did not amend section 2023.030, but the Legislature addressed that and other apparent oversights in 2012 when it enacted Senate Bill No. 1574 (2011-2012 Reg. Sess.). (See *Vasquez v. California School of Culinary Arts*, *Inc.* (2014) 230 Cal.App.4th 35, 41 [the Electronic Discovery Act "was amended in 2012 to expand the provisions regarding electronic discovery"].) Inter alia, Senate Bill No. 1574 amended section 2023.030 to add the safe-harbor provision for ESI and the accompanying language that the section "shall not be construed to alter any obligation to preserve discoverable information." (§ 2023.030(f)(2), as amend. by Stats 2012, ch. 72, § 19.) As with the Electronic Discovery Act, the legislative history of Senate Bill No. 1574 demonstrates the Legislature expressly intended that the safe-harbor provision of section 2023.030(f) "would not otherwise relieve parties of their obligations to preserve discoverable

16

information," and that, "[w]hen a party is under a duty to preserve information *because of pending or reasonably anticipated litigation*, a party would still be required to modify or suspend features of the routine operation of a computer system to prevent loss of information." (Sen. Com. on Judiciary, Analysis of Sen. Bill. No. 1574 (2011-2012 Reg. Sess.) as amend. Apr. 19, 2012, p. 10, italics added.)[9]

In short, the legislative history demonstrates the safe-harbor provision of section 2023.030(f) is intended to shield a party or a party's attorney from sanctions for the alteration or destruction of ESI only if the evidence was lost before the party was under a duty to preserve that evidence "because of pending or *reasonably anticipated* litigation." (Sen. Com. on Judiciary, Analysis of Sen. Bill. No. 1574, *supra*, as amend. Apr. 19, 2012, p. 10, italics added.) However, the legislative history does not answer the question: what constitutes reasonably anticipated litigation? Nor does the extant California caselaw provide an answer.[10] (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2022) ¶ 8:19.16, pp. 8A-12 to 8A-13 [noting "there is no known California authority in point" regarding a party's duty to preserve ESI].)

---

[9] Available at <http://www.leginfo.ca.gov/pub/11-12/bill/sen/sb_1551-1600/sb_1574_cfa_20120430_151858_sen_comm.html> (as of Dec. 22, 2022).

[10] In its petition, the district cites two nonpublished Court of Appeal decisions that did address when the duty to preserve evidence for future litigation arises. Except for in limited circumstances, nonpublished decisions of the Court of Appeal may not be cited or relied upon by a party or a court. (Cal. Rules of Court, rule 8.1115(a).) Because we find no applicable exception to that rule (*id*., rule 8.1115(b)), we will ignore the cited decisions.

*3.     Under persuasive federal caselaw about the spoliation of evidence, a duty to preserve evidence arises when the party to be sanctioned was objectively aware that future litigation was reasonably foreseeable, meaning the litigation was probable or likely to arise from an incident.*

"There is little California case law regarding discovery of electronically stored information . . . .  We look, therefore, to federal case law on the discovery of electronically stored information under the Federal Rules of Civil Procedure for guidance on the subject." (*Vasquez v. California School of Culinary Arts, Inc.*, *supra*, 230 Cal.App.4th at pp. 42-43; see *Reeves v. MV Transportation, Inc.*, *supra*, 186 Cal.App.4th at pp. 681-682 [discussing federal case law on the spoliation of evidence].)  "'Because of the similarity of California and federal discovery law, federal decisions have historically been considered persuasive absent contrary California decisions.'" (*Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 861, fn. 6, quoting *Liberty Mutual Ins. Co. v. Superior Court* (1992) 10 Cal.App.4th 1282, 1288; accord, *Nagle v. Superior Court* (1994) 28 Cal.App.4th 1465, 1468.)

The federal courts have held that "'a party can only be sanctioned for destroying evidence if it had a duty to preserve it.'" (*Micron Technology, Inc. v. Rambus Inc.* (Fed. Cir. 2011) 645 F.3d 1311, 1320 (*Micron*).)  "Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or *reasonably foreseeable* litigation." (*Silvestri v. General Motors*

18

*Corp.* (4th Cir. 2001) 271 F.3d 583, 590, citing *West v. Goodyear Tire & Rubber Co.* (2d Cir. 1999) 167 F.3d 776, 779, italics added.)  "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."  (*Silvestri*, at p. 591; see *Gerlich v. U.S. Department of Justice* (D.C. Cir. 2013) 711 F.3d 161, 170-171 ["Other circuit courts of appeals have held that a duty of preservation exists where litigation is reasonably foreseeable. . . .  We now do likewise."].)

Whether litigation is "'reasonably foreseeable'" "is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation.  [¶]  When litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.  [Citation.]  This standard does not trigger the duty to preserve documents from the mere existence of a potential claim or the distant possibility of litigation.  [Citation.]  However, it is not so inflexible as to require that litigation be 'imminent, or probable without significant contingencies . . . .'"  (*Micron*, *supra*, 645 F.3d at p. 1320.)

The parties agree that the reasonably foreseeable standard is the correct test for determining when a party is under a duty to preserve evidence for purposes of the safe-harbor provision of section 2023.030(f), but they disagree about the meaning of the standard. The district argues future litigation is reasonably foreseeable if it is probable or likely to arise from an incident, but litigation is not foreseeable if it is a mere possibility. Real parties in interest reject the suggestion that future litigation must be probable or likely for it to be reasonably foreseeable. We agree with the district.

Many federal district courts have ruled that the duty to preserve evidence arises when future litigation is "probable" or "likely." (E.g., *Freidig v. Target Corp.* (W.D. Wisc. 2018) 329 F.R.D. 199, 207 ["When a party is aware of an accident that it knows is likely to cause litigation, it triggers the party's duty to preserve evidence."]; *In re Napster Inc. Copyright Litigation* (N.D. Cal. 2006) 462 F.Supp.2d 1060, 1068 ["The future litigation must be 'probable,' which has been held to mean 'more than a possibility.'"]; *Realnetworks*, *Inc. v. DVD Copy Control Ass'n* (N.D. Cal. 2009) 264 F.R.D. 517, 524

[same].)[11]  Relying on *Hynix Semiconductor Inc. v. Rambus Inc.* (Fed. Cir. 2011)

645 F.3d 1336 (*Hynix II*), real parties in interest argue those decisions are not good law.

We are not persuaded.

---

**11**  Accord, *Pettit v. Smith* (D. Ariz. 2014) 45 F.Supp.3d 1099, 1106 [ruling nonparty "had a duty to preserve evidence relevant to this case once it knew that litigation was reasonably likely."]; *Bruno v. Bozzuto's*, *Inc.* (M.D. Penn. 2012) 850 F.Supp.2d 462, 470 ["Plaintiffs had a duty to preserve evidence once litigation became likely."]; *Philips Electronics North America Corp. v. BC Technical* (D. Utah 2010) 773 F.Supp.2d 1149, 1195 ["In most cases, the duty to preserve is triggered by the filing of a lawsuit, but that duty may arise even before a lawsuit is filed if a party has notice that future litigation is likely."]; *John B. v. Goetz* (M.D. Tenn. 2010) 879 F.Supp.2d 787, 867 ["A duty to preserve may also arise before the filing of the complaint, if a party has notice that litigation of a matter is likely to be filed."]; *Macneil Automotive Products*, *Ltd. v. Cannon Automotive*, *Ltd.* (N.D. Ill. 2010) 715 F.Supp.2d 786, 801 [party has a duty to preserve evidence "even prior to the filing of a complaint as long as it is known that litigation is likely to commence"; ruling plaintiff would not "have known that litigation between itself and [the defendant] was probable" when it disposed of evidence at issue in later litigation]; *Kounelis v. Sherrer* (D. N.J. 2008) 529 F.Supp.2d 503, 518 ["An independent duty to preserve relevant evidence arises when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable . . . ."]; *Cache La Poudre Feeds*, *LLC v. Land O'Lakes Farmland Feed*, *Inc.* (D. Colo. 2007) 244 F.R.D. 614, 621 ["[T]he obligation to preserve evidence may arise even earlier [than the filing of a complaint] if a party has notice that future litigation is likely."]; *Creative Resources Group of New Jersey*, *Inc. v. Creative Resources Group*, *Inc.* (E.D. N.Y. 2002) 212 F.R.D. 94, 106 ["[T]he duty to preserve may arise even prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced."]; *Larison v. City of Trenton* (D. N.J. 1998) 180 F.R.D. 261, 267 [ruling plaintiff could not prove cause of action for the spoliation of evidence because videotape of his arrest was destroyed before litigation was "pending or probable"]; *Baliotis v. McNeil* (M.D. Penn. 1994) 870 F.Supp. 1285, 1290 [duty to preserve evidence arises when party becomes reasonably aware of "'pending or probable litigation,'" italics omitted].)

"Unlike in the federal courts of appeals (see, e.g., U.S. Cir. Ct. Rules (9th Cir.), rules 36-1 to 36-5), in the federal district courts there is no formal provision to certify decisions for publication.  District court orders that are included in reports such as the Federal Supplement are only 'unofficially reported.'" (*Barriga v. 99 Cents Only Stores LLC* (2020) 51 Cal.App.5th 299, 316, fn. 8 (*Barriga*).)  However, the prohibition on citing nonpublished California decisions (cited *ante*, fn. 10), does not apply to decisions of the lower federal courts.  (*Ibid.*)

21

In *Hynix Semiconductor Inc. v. Rambus, Inc.* (N.D. Cal. 2006) 591 F.Supp.2d 1038 (*Hynix I*), vacated in part by *Hynix II*, *supra*, 645 F.3d 1336, the district court addressed a motion to dismiss the defendant's patent counterclaims based on unclean hands because it "adopted a document retention plan in order to destroy documents in advance of a planned litigation campaign . . . ." (*Hynix I*, at pp. 1041-1042.) The court noted that "the primary question" was whether the defendant adopted its document retention policy "in advance of reasonably foreseeable litigation." (*Id.* at p. 1060.) "[T]he obligation to preserve evidence arises when 'the party has notice that the evidence is relevant to litigation—most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation.'" (*Hynix I*, *supra*, 591 F.Supp.2d at p. 1061, quoting *Kronisch v. U.S.* (2d Cir. 1998) 150 F.3d 112, 126.) "'When a lawyer who has been retained to handle a matter learns that litigation is probable or has been commenced, the lawyer should inform the client of its duty to preserve potentially relevant documents . . . .'" (*Hynix I*, at p. 1061, quoting American Bar Association Section of Litigation, Civil Discovery Standards (Aug. 1999) Standard 10.) "'[P]robable' . . . means that litigation must be more than a possibility [citations]. Litigation 'is an ever-present possibility in American life.'" (*Hynix I*, at p. 1061.)

The court in *Hynix I* agreed with the plaintiff that whether litigation is "'probable' must be viewed from the perspective of a plaintiff, who is in control of when the litigation is to be commenced," and "that litigation is probable when litigation is contemplated." (*Hynix I*, *supra*, 591 F.Supp.2d at p. 1061.)  The court ruled, however, that the litigation in that case was not "'probable'" when the defendant adopted its document retention policy because "the path to litigation was neither clear nor immediate" and "several contingencies had to occur before [the defendant] would engage in litigation . . . ." (*Id*. at p. 1062.)  Therefore, the court ruled the defendant had not engaged in the spoliation of evidence.  (*Id*. at p. 1065.)

On appeal, the U.S. Court of Appeals for the Federal Circuit vacated that portion of the decision in *Hynix I*.  (*Hynix II*, *supra*, 645 F.3d at p. 1341.)  "'[S]poliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'  [Citation.]  Most relevant in this case is the point when the duty to preserve evidence begins.  This determination is informed by a number of policy considerations, including 'the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth,' [citation], and must balance the reality that 'litigation is an ever-present possibility in American life,' [citation], with the legitimate business interest of eliminating unnecessary documents and data." (*Hynix II*, at pp. 1344-1345.)

As in our case, the parties to *Hynix II* agreed that the "reasonably foreseeable" test was the correct standard but disagreed on what it meant. (*Id.* at pp. 1345-1347.) The plaintiff argued "that reasonable foreseeability incorporates no requirement of imminence of litigation, while [the defendant] argue[d] that 'to be reasonably foreseeable, litigation must be "imminent," at least in the sense that it is probable and free of significant contingencies.'" (*Hynix II*, *supra*, 645 F.3d at p. 1345.) The federal circuit disagreed with the district court (and with the defendant) that the "reasonably foreseeable" standard is only met when the litigation is """"imminent."""" (*Ibid.*) "In *Micron*, *supra*, 645 F.3d 1311], this court held that that standard does not carry a gloss requiring that litigation be 'imminent, or probable without significant contingencies.'" [Citation]. The district court here applied just such a standard." (*Hynix II*, at p. 1345.)

"The narrow standard applied by the district court in this case vitiates the reasonable foreseeability test, and gives free reign to destroy documents to the party with the most control over, and potentially the most to gain from, their destruction. This fails to protect opposing parties' and the courts' interests in uncovering potentially damaging documents, and undermines the level evidentiary playing field created by discovery that lies at the heart of our adversarial system. [Citation.] [¶] Applying the correct standard of reasonable foreseeability, without the immediacy gloss, these considerations compel a finding that litigation was reasonably foreseeable prior to [the defendant's] Second Shred Day." (*Hynix II*, *supra*, 645 F.3d at pp. 1346-1347.) Therefore, the federal circuit held "the district court erred in applying too narrow a standard of reasonable foreseeability as requiring that litigation be immediate or certain, which was legal error," vacated the

ruling on the plaintiff's motion to dismiss, and remanded for the district court to apply the correct standard of reasonable foreseeability set forth in *Micron*, *supra*, 645 F.3d 1311. (*Hynix II*, at p. 1347.)

Real parties in interest read *Hynix II* as expressly disapproving of *Hynix I* (and, implicitly, the other decisions cited, *ante*) to the extent it read the reasonably foreseeable standard as requiring that litigation be probable before a party has a duty to preserve evidence. But, this reflects too broad a reading of *Hynix II*. The federal circuit patently did not hold that the district court had erred by concluding litigation must be probable for it to be reasonably foreseeable. The same appellate court had already ruled in an earlier appeal involving the same defendant that the "'reasonably foreseeable'" test "does not trigger the duty to preserve documents from the mere existence of a *potential claim* or the *distant possibility* of litigation" (*Micron*, *supra*, 645 F.3d at p. 1320, italics added), which is consistent with saying the litigation must be "probable." Instead, *Hynix II* held the district court had erred when it ruled the future litigation must be "'*imminent*, or probable *without significant contingencies*.'" (*Hynix II*, *supra*, 645 F.3d at p. 1345, italics added; see *PacifiCorp v. Northwest Pipeline GP* (D. Or. 2012) 879 F.Supp.2d 1171, 1190 [noting *Hynix II* rejected a "*hyper-technical* reliance on terms like 'probable,'" italics added].) It was the "immediacy" and "certain[ty]" glosses on the reasonable

25

foreseeability standard that the federal circuit disapproved.**12** (*Hynix II*, at p. 1347.)

Moreover, the requirement that future litigation be probable or likely for it to have been reasonably foreseeable is consistent with the federal analog to Code of Civil Procedure section 2023.030(f). Rule 37(e) of the Federal Rules of Civil Procedure (28 U.S.C.) provides for sanctions "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery . . . ."**13** "The . . . rule applies only if the lost information should have been preserved in the anticipation or conduct of litigation and the party failed to take reasonable steps to preserve it. Many court decisions hold that potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable.

---

**12** Other circuit U.S. Courts of Appeals require that future litigation be "imminent" before a party is held to a duty to preserve relevant evidence. (See, e.g., *Norman-Nunnery v. Madison Area Technical College* (7th Cir. 2010) 625 F.3d 422, 428-429; *Turner v. Public Service Co. of Colorado* (10th Cir. 2009) 563 F.3d 1136, 1149.) We will follow the federal circuit and decline to impose such an imminence requirement on the "'reasonably foreseeable'" standard. (*Micron*, *supra*, 645 F.3d at p. 1320; see *Hynix II*, *supra*, 645 F.3d at pp. 1345, 1347.)

**13** Rule 37(e) of the Federal Rules of Civil Procedure states in full: "Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: [¶] (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or [¶] (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: [¶] (A) presume that the lost information was unfavorable to the party; [¶] (B) instruct the jury that it may or must presume the information was unfavorable to the party; or [¶] (C) dismiss the action or enter a default judgment."

Rule 37(e) is based on this common-law duty; it does not attempt to create a new duty to preserve.  The rule does not apply when information is lost before a duty to preserve arises."  (Fed. Rules Civ.Proc., rule 37(e), Advisory Com. notes on 2015 amendments.)  "In applying the rule, a court may need to decide whether and when a duty to preserve arose.  *Courts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant*."  (*Ibid*., italics added.)

Finally, we note that a probable or likely gloss on the reasonably foreseeable standard is consistent with other tests for foreseeability.  For example, in the context of a claim of negligence, one of the major considerations in determining whether the defendant owed the plaintiff a duty of care is "the foreseeability of harm to the plaintiff."  (*Roland v. Christian* (1968) 69 Cal.2d 108, 113.)  "'"[F]oreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct."'"  (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1145, quoting *Bigbee v. Pac. Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57.)  "Foreseeability lies on a 'continuum from a mere possibility to a reasonable probability.'"  (*Tan v. Arnel Management Co.* (2009) 170 Cal.App.4th 1087, 1101, quoting *Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1214.)

We find federal law on the spoliation of evidence to be persuasive and conclude the safe-harbor provision of section 2023.030(f) applies when ESI was altered or destroyed *before* the party in possession and/or control of the information was objectively aware that the ESI would be relevant to anticipated future litigation, meaning the

litigation was "reasonably foreseeable." (*Silvestri v. General Motors Corp.*, *supra*, 271 F.3d at p. 590.) Litigation is reasonably foreseeable when it is "probable" or "likely" to arise from a dispute or incident (e.g., *Macneil Automotive Products*, *Ltd. v. Cannon Automotive*, *Ltd.*, *supra*, 715 F.Supp.2d at p. 801), but not when there is no more than the "mere existence of a potential claim or the distant possibility of litigation." (*Micron*, *supra*, 645 F.3d at p. 1320.) However, the "reasonable foreseeability" standard does not require that the future litigation be "'imminent [or] probable *without significant contingencies*,'" or even "certain." (*Hynix II*, *supra*, 645 F.3d at pp. 1345, 1347, italics added.)

> 4. *A breach of the district's statutory duty to preserve evidence, assuming such a breach occurred, does not support the trial court's sanctions order.*

Notwithstanding the foregoing, real parties in interest argue Government Code section 53160 required the district to preserve the video and that its failure to comply with that statutory duty gives rise to an inference of the spoliation of evidence. They argue, at least implicitly, that even if this litigation was not "'reasonably foreseeable'" when the video was erased, because it was not "'probable'" or "'likely,'" the sanctions order was still correct because the district breached that statutory duty.[14]

---

[14] The trial court did not address a statutory duty to preserve evidence.

In principle, we agree that a party may be under a statutory or regulatory duty to preserve evidence, and that, in an appropriate case, breach of that duty may result in some form of sanction. (Cf. *Temple Community Hospital v. Superior Court* (1999) 20 Cal.4th 464, 477 ["[T]o the extent a duty to preserve evidence is imposed by statute or regulation upon the third party, the Legislature or the regulatory body that has imposed this duty generally will possess the authority to devise an effective sanction for violations of that duty."]; see *Nelson v. Superior Court* (2001) 89 Cal.App.4th 565, 572-576 [holding government claim placed a county and its sheriff's department on notice to preserve audio recordings pursuant to Gov. Code, § 26202.6—the city and county analog to § 53160—and remanding for the trial court to decide whether destruction of the recordings was in bad faith and what, if any, sanctions were appropriate].) However, we are not persuaded that a breach of the district's statutory duty to preserve evidence, assuming there was such a breach, is controlling here or independently supports the trial court's sanctions order.

Government Code section 53160, subdivision (a), provides: "The head of a special district, after one year, may destroy recordings of routine video monitoring, and after 100 days may destroy recordings of telephone and radio communications maintained by the special district. This destruction shall be approved by the legislative body and the written consent of the agency attorney shall be obtained. In the event that

the recordings are evidence in any claim filed or any pending litigation, they shall be preserved until pending litigation is resolved."[15]

As real parties in interest contend, "several [federal] courts have held that destruction of evidence in violation of a regulation that requires its retention can give rise to an inference of spoliation." (*Byrnie v. Town of Cromwell Bd. of Educ.* (2d Cir. 2001) 243 F.3d 93, 108-109, superseded in part by Fed. Rules Civ.Proc., rule 37(e), as stated in *Mazzei v. Money Store* (2d Cir. 2016) 656 Fed.Appx. 558, 560.) But those courts have only approved the application of an adverse evidentiary presumption about the content of the destroyed evidence, and they do not support the imposition of more drastic sanctions. For example, the U.S. Court of Appeals for the District of Columbia has held that entry of a default judgment as a sanction for the destruction of evidence that should have been maintained under a regulatory duty "is a 'drastic' sanction [that] is merited only when 'less onerous methods . . . will be ineffective or obviously futile,'" and an "evidentiary presumption that the destroyed documents contained favorable evidence for the party prejudiced by their destruction [is] a lesser, more common sanction." (*Talavera v. Shah* (D.C. Cir. 2011) 638 F.3d 303, 311.)

---

**15** "[R]outine video monitoring' means video recording by a video or electronic imaging system designed to record the regular and ongoing operations of the special district, including mobile in-car video systems, jail observation and monitoring systems, and building security recording systems." (Gov. Code, § 53160, subd. (c).) "'[S]pecial district'" has the same meaning as "'public agency'" in section 53050 (§ 53160, subd. (d)), to wit, "a district, public authority, public agency, and any other political subdivision or public corporation in the state, but does not include the state or a county, city and county, or city." (§ 53050.) For the limited purpose of this proceeding, we will assume a public school district is a "special district" as contemplated in section 53160.

In addition, the main decision cited by real parties in interest held that a breach of a regulatory duty to preserve evidence will support an adverse evidentiary presumption only when "the party seeking the inference [is] a member of the general class of persons" that the duty was designed to protect. (*Byrnie v. Town of Cromwell Bd. of Educ.*, *supra*, 243 F.3d at p. 109.) And the committee notes to the 2015 amendments to rule 37(e) of the Federal Rules of Civil Procedure caution against knee-jerk reliance on a statutory or regulatory duty to preserve evidence when determining whether sanctions for the spoliation of evidence are warranted. "Although the rule focuses on the common-law obligation to preserve in the anticipation or conduct of litigation, courts may sometimes consider whether there was an independent requirement that the lost information be preserved. Such requirements arise from many sources—statutes, administrative regulations, an order in another case, or a party's own information-retention protocols. The court should be sensitive, however, to the fact that such independent preservation requirements may be addressed to a wide variety of concerns unrelated to the current litigation. *The fact that a party had an independent obligation to preserve information does not necessarily mean that it had such a duty with respect to the litigation*, *and the fact that the party failed to observe some other preservation obligation does not itself prove that its efforts to preserve were not reasonable with respect to a particular case*." (Fed. Rules Civ.Proc., rule 37(e), Advisory Com. notes on 2015 amendments, italics added.)

Finally, under both federal and California law an adverse evidentiary presumption, as a sanction for failure to comply with a statutory or regulatory duty to preserve evidence, is only appropriate if the trier of fact concludes the evidence was intentionally destroyed. (Fed. Rules of Civ.Proc., rule 37(e)(2)(A), (B) [inference permissible if court finds "the party acted with the intent to deprive another party of the information's use in the litigation."]; Evid. Code, § 413 [trier of fact may draw adverse evidentiary presumption from a party's "willful suppression of evidence"]; CACI No. 204 ["You may consider whether one party intentionally concealed or destroyed evidence. If you decide that a party did so, you may decide that the evidence would have been unfavorable to that party."]; see *New Albertson's*, *Inc. v. Superior Court*, *supra*, 168 Cal.App.4th at p. 1434.)

Real parties in interest cite no authority for the proposition that they are members of the general class of persons the Legislature intended to protect when it enacted Government Code section 53160, and we have found none. And, even assuming they are members of that general class, they would not be entitled to an adverse evidentiary presumption because the trial court expressly ruled the erasure of the video was negligent and not intentional.

Therefore, we decline to find that a breach of the district's statutory duty to preserve evidence, assuming there was such a breach, gives rise to a presumption of the spoilation of evidence and independently supports the sanctions order.

*C.* *The Trial Court Appears To Have Applied the Correct Legal Standard of Reasonable Foreseeability, but the Record Does Not Support its Ruling That the District Was Under a Duty To Preserve Evidence When the Video Was Erased.*

The district argues the trial court applied the wrong legal standard when it ruled the district had a duty to preserve evidence before the video was erased. Although we conclude the trial court appears to have applied the correct legal standard, we conclude the record does not support its ruling.

"Normally, we must presume the trial court was aware of and understood the scope of its authority and discretion under the applicable law. [Citations.] 'This rule derives in part from the presumption of Evidence Code section 664 "that official duty has been regularly performed."' [Citation.] The rebuttable presumption under section 664 ""affect[s] the burden of proof' (Evid. Code, § 660), meaning that the party against whom it operates . . . has 'the burden of proof' as to the nonexistence of the presumed fact. (Evid. Code, § 606 . . . .)"""" (*Barriga*, *supra*, 51 Cal.App.5th at pp. 333-334.)

"If the record demonstrates the trial court was unaware of its discretion or that it misunderstood the scope of its discretion under the applicable law, the presumption has been rebutted, and the order must be reversed. [Citation.] '"[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue." [Citations.] Therefore, a discretionary decision may be reversed if improper criteria were applied or incorrect legal assumptions were made. [Citation.] Alternatively stated, if a trial court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of

the full scope of its discretion, it cannot be said the court has properly exercised its discretion under the law. [Citations.] Therefore, a discretionary order based on the application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal even though there may be substantial evidence to support that order. [Citations.] If the record affirmatively shows the trial court misunderstood the proper scope of its discretion, remand to the trial court is required to permit that court to exercise informed discretion with awareness of the full scope of its discretion and applicable law.'" (*Barriga*, *supra*, 51 Cal.App.5th at p. 334.)

The district contends the trial court did not apply the correct "reasonably foreseeable" standard as we have articulated, *post*. According to the district, the court applied too speculative a standard when it ruled the district already had a duty to preserve evidence when the video was erased because "'it was reasonably foreseeable the incident *might* result in litigation.'" We decline to place too much weight on the trial court's use of the word "might." As the trial court noted, the district itself had argued in its written opposition to the sanctions motion that it "had no reason to even suspect, let alone reasonably expect, that any litigation *might* arise from the alleged incident." (Italics added.) Moreover, the trial court appears to have adopted the reasonably foreseeable standard articulated by the district in its written opposition to the motion, and the court cited federal decisions applying that standard, including *Hynix II*, *supra*, 645 F.3d 1336.

In any event, we conclude the trial court's ruling is not supported by the extant record. The trial court noted the district had a special relationship to Doe and other students. Because of that special duty of care, the trial court ruled the district would have

34

been on notice that litigation would arise from an injury to Doe that was allegedly caused by the district's breach of its heightened duty of care, and such notice triggered the district's duty to preserve the video. But the mere fact that the district owed a duty of care toward Doe, and Doe was allegedly injured, does not ineluctably lead to the conclusion that, at the time the video was erased, the district was on notice that litigation was probable or likely. At most, the trial court ruled the assistant principal "knew the significance of the video and that it would be important *if* any further investigation, or eventual litigation, arose from the incident." (Italics added.)

"'The mere existence of a dispute does not necessarily mean that parties should reasonably anticipate litigation.' [Citations.] Instead, the duty seems to begin 'somewhere between knowledge of the dispute and direct, specific threats of litigation.'" (*Steves and Sons*, *Inc. v. Jeld-Wen*, *Inc.* (E.D. Va. 2018) 327 F.R.D. 96, 106.) "There is no single bright line that definitively marks when litigation reasonably should be anticipated. Instead, courts consider a variety of factors, including the type and seriousness of the injury; how often similar kinds of incidents lead to litigation; the 'course of conduct between the parties, including past litigation or threatened litigation'; and what steps both parties took after the incident and before the loss of the evidence, including whether the defendant initiated an investigation into the incident." (*Bistrian v. Levi* (E.D. Penn. 2020) 448 F.Supp.3d 454, 468.) "[A] party's duty to preserve arises when it has notice that the documents might be relevant to a reasonably-defined future litigation. Ultimately, the court's decision as to when a party was on notice must be guided by the particular facts of each case." (*Zbylski v. Douglas County School District*

35

(D. Colo. 2015) 154 F.Supp.3d 1146, 1164 (*Zbylski*); see *id*. at p. 1163 [factors include "notification received from a potential adversary."].)

Real parties in interest point to nothing in the record that would necessarily have put the district on notice that the specific incident involving Doe would probably or likely have resulted in litigation. Doe's father learned of the alleged incident a day later. But, the record before us reflects that, until Doe's parents filed their government claim some six months later, they did not communicate with the district or with school officials in such a manner that would have reasonably caused the district to foresee litigation.[16] (See, e.g., *Hollis v. CEVA Logistics U.S.*, *Inc.* (N.D. Ill., May 19, 2022, No. 19 CV 50135) ___ F.Supp.3d ___ [2022 U.S.Dist. Lexis 90234, *12] [plaintiff's "letter that he referred to as a 'formal letter of complaint against CEVA Logistics for workplace race discrimination,' alerted CEVA both to the nature of his allegations and the relevance of

---

[16] Real parties in interest's reliance on *J.K. v. Bellevue School Dist. No. 5* (2021) 20 Wash.App.2d 291 is misplaced. In that case, the defendant school district failed to preserve video footage that likely captured sexual assaults of a student "despite having received requests to do so—before the evidence was destroyed—from both the plaintiff and the defendant's own counsel." (*Carroll v. Akebono Brake Corp.* (2022) 22 Wn.App.2d 845, 878 [distinguishing *J.K.*].) No such requests to preserve the video were made in this case.

Likewise, *Zbylski*, *supra*, 154 F.Supp.3d 1146 is distinguishable. In that case, the district court ruled a school district had a duty to preserve evidence about the alleged sexual assault of a student *by a teacher* even before the student's parents threatened litigation. (*Id*. at p. 1165.) We assume without deciding that an alleged sexual assault of a student by a teacher or adult school staff member is more likely to result in litigation than an alleged assault by a fellow student. Moreover, in *Zyblski*, the school district was aware of rumors of inappropriate relationships between the teacher and two other female students well before the incident alleged in the lawsuit, the school expressly promised parents that it would investigate the rumors but never conducted such an investigation, and the school placed the teacher on administrative leave. (*Id*. at pp. 1164-1167.)

any video recording of the incident" and "triggered a duty to preserve video of the incident."]; *Federal Trade Commission v. F&G International Group Holdings*, *LLC* (S.D. Ga. 2021) 339 F.R.D. 325, 330 [defendant's duty to preserve evidence arose when it was "put on notice" of an investigation by the Federal Trade Commission and when it was instructed to suspend normal document destruction practices].)

Nor would the mere fact of the alleged sexual assault have necessarily caused the district to immediately foresee litigation. (See *Archer v. York City School District* (M.D. Penn. 2016) 227 F.Supp.3d 361, 380 [rejecting argument that school district's decision not to renew charter school, which resulted in "'the disruption of 700-800 children" and the loss of "tens of millions of dollars," would undoubtedly have put the district on notice of probable litigation and triggered its duty to preserve an e-mail outlining the reasons to not renew the charter school].) Certain types of incidents, such as slip and fall accidents or prison assaults, predictably result in litigation. "That is not to say that the mere fact of a slip-and-fall or a prison assault is *always* enough to put defendants on notice of potential litigation and trigger a duty to preserve. But such an event *combined with other circumstances* may often be enough that defendants should reasonably anticipate litigation beginning soon after the incident itself." (*Bistrian v. Levi*, *supra*, 448 F.Supp.3d at p. 469, italics added.) For example, a store is placed on notice that litigation is reasonably foreseeable when a customer submits a "guest incident report" stating he or she slipped and fell on a puddle. (*Freidig v. Target Corp.*, *supra*, 329 F.R.D. at p. 207.) In addition, a party will be on notice that litigation arising from an injury is reasonably foreseeable when, among other things, it learns the injured persons have

retained counsel. (See *In re New Canyonlands by Night*, *LLC* (D. Utah 2019) 415 F.Supp.3d 1020, 1024-1025.) Nothing similar occurred in this case.

Moreover, the mere fact that a party has conducted an internal investigation of an incident and produced a report about it does not necessarily mean the party was on notice of potential litigation. The assistant principal's half-page narrative report merely set forth what he observed on the video, the statements he had received from school personnel, and some of the changes that had been made to "restroom protocols to enhance bathroom supervision." Although the assistant principal prepared his report at the request of the district's human resources department, nothing in the record indicates the district anticipated the report would be used to defend against reasonably foreseeable litigation. At most, the record demonstrates that preparation of such a report is a routine practice of the district's risk management department for use to defend against a claim, *if one is made*. Without more, the report did not place the district "on *ample* notice of future litigation." (*Black v. Costco Wholesale Corporation* (M.D. Tenn. 2021) 542 F.Supp.3d 750, 753, italics added [noting that some courts have ruled a party has a duty to preserve evidence when an internal report puts the party on notice of litigation].)

Finally, we disagree with real parties in interest's belated assertion that the district's invocation of the attorney-client privilege and attorney work product protection—when it opposed real parties in interest's request for production of an unredacted copy of the assistant principal's report—necessarily demonstrates the district was objectively aware that litigation was reasonably foreseeable before the video was

erased.[17]  For instance, the assistant principal's narrative report and his e-mail transmitting the report to the district did not state the contents of the report were protected by the attorney-client privilege.  (See, e.g., *Zubulake v. UBS Warburg LLC* (S.D. N.Y. 2003) 220 F.R.D. 212, 216-217 [ruling defendant reasonably anticipated litigation because internal company e-mails about the plaintiff were labeled attorney-client privilege and most people in the company who were associated with the plaintiff recognized the possibility she might sue].)

When a party asserts the attorney-client privilege and/or attorney work product protection over a document that had been previously entered in a privilege log, courts may consider the act of entry as evidence the party had already identified a potential claim and had reasonably anticipated it would result in litigation.  (See *Oracle America, Inc. v. Hewlett Packard Enterprise Company* (N.D. Cal. 2018) 328 F.R.D. 543, 550-551.) In contrast, the district's claim of attorney-client privilege made during this lawsuit, without more, "can hardly be read as an admission" that it had reasonably anticipated litigation would commence *before* the evidence was destroyed.  (*Edifecs*, *Inc. v. Welltok*, *Inc.* (W.D. Wash., Nov. 8, 2019, No. C18-1086JLR) [2019 U.S.Dist. Lexis 194858, *12]; see *Moore v. Lowe's Home Centers*, *LLC* (W.D. Wash., June 24, 2016, No. 2:14-cv-01459-RJB) [2016 U.S.Dist. Lexis 82652, *9-*10] [rejecting the plaintiff's claim that defendant reasonably anticipated litigation and had the duty to preserve e-mails because,

---

**17**  Real parties in interest did not make this argument in support of their sanctions motion and the trial court did not rely on the district's invocation of the attorney-client privilege and attorney work product protection when it ruled the district was under a duty to preserve the video before it was erased.

among other things, the defendant asserted the attorney-client privilege and attorney work product protection during the litigation].)

In short, we conclude the extant record does not support the trial court's ruling that the district had a duty to preserve the video because litigation was reasonably foreseeable at the time the video was erased. Therefore, we grant the petition and direct the trial court to vacate its sanctions order and reconsider its ruling. The court may, in its discretion, permit the parties to introduce additional evidence that is relevant to determining whether the district was under a duty to preserve evidence at the time the video was erased.

*D.     If the Trial Court Once More Concludes the District Should Be Sanctioned for the Spoliation of Evidence, the Court Must Consider Whether Lesser Sanctions Are Appropriate.*

Because we now direct the trial court to vacate its sanctions order and reconsider its ruling, we need not decide whether the issue and evidentiary sanctions it imposed were excessive.[18] However, if on remand the trial court once more concludes the district was under a duty to preserve the video before its erasure, the court must consider whether some lesser form of sanction is warranted.

---

**18** Nor need we decide whether the district forfeited any challenge to the severity of the sanctions by not fully articulating such a claim in its petition. (See *Magana v. Superior Court* (2018) 22 Cal.App.5th 840, 854, fn. 2 [finding argument petitioner had made in the trial court but did repeat in his petition was forfeited "despite his belated attempt to resurrect it in his reply brief."]; *County of Los Angeles v. Superior Court* (2013) 222 Cal.App.4th 434, 452, fn. 14 [disregarding petitioner's argument "made for the first time in its reply to opposition to petition for writ of mandate"].)

"'The trial court has broad discretion in selecting discovery sanctions, subject to reversal only for abuse. [Citations.] The trial court should consider both the conduct being sanctioned and its effect on the party seeking discovery and, in choosing a sanction, should "'attempt[] to tailor the sanction to the harm caused by the withheld discovery.'" [Citation.] The trial court cannot impose sanctions for misuse of the discovery process as a punishment. [Citation.] [¶] The discovery statutes evince an incremental approach to discovery sanctions, starting with monetary sanctions and ending with the ultimate sanction of termination. "Discovery sanctions 'should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery.'" [Citation.] If a lesser sanction fails to curb misuse, a greater sanction is warranted: continuing misuses of the discovery process warrant incrementally harsher sanctions until the sanction is reached that will curb the abuse.'" (*Padron v. Watchtower Bible & Tract Society of New York*, *Inc.* (2017) 16 Cal.App.5th 1246, 1259-1260, quoting *Doppes v. Bentley Motors*, *Inc.* (2009) 174 Cal.App.4th 967, 992.)

"A discovery order, though not in the form of a default or dismissal, is justifiably treated as such where the effect of the order is to preclude proof of essential elements of each cause of action." (*Puritan Ins. Co. v. Superior Court* (1985) 171 Cal.App.3d 877, 884, citing *Karz v Karl* (1982) 137 Cal.App.3d 637, 648.) "The sanction of dismissal or the rendition of a default judgment against the disobedient party is ordinarily a drastic measure which should be employed with caution. [Citation.] The sanction of dismissal, where properly employed, is justified on the theory the party's refusal to reveal material evidence tacitly admits his claim or defense is without merit." (*Puritan Ins. Co.*, at

41

p. 885.)  Except for in cases of extreme misconduct and when other viable options are unavailable, a trial court abuses its discretion when a sanctions order deprives a party "of any right to defend the action upon its merits" and was "designed not to accomplish the purposes of discovery but designed to punish" the party for not fully complying with its discovery obligations.  (*Caryl Richards*, *Inc. v. Superior Court* (1961) 188 Cal.App.2d 300, 305; accord, *Newland v. Superior Court* (1995) 40 Cal.App.4th 608, 613-616 [party's failure to timely pay monetary sanctions did not warrant terminating sanctions].)

Although the trial court ruled the erasure of the video was not intentional and denied real parties in interest's request for terminating sanctions, the sanctions it imposed were tantamount to terminating sanctions.  The district was precluded from introducing evidence—on the sole remaining cause of action for negligence—to prove that it did not breach a duty of care to Doe or that Doe was contributorily negligent.  If, on reconsideration, the court once more concludes the district should be sanctioned for the spoliation of evidence, the court must consider whether some lesser form of sanction will remedy the discovery violation before it imposes the same or similar issue and evidence sanctions that it did before.  We express no opinion here about what sanctions would be appropriate.

## III.

## DISPOSITION

The petition for writ of mandate is granted.  Let a writ of mandate issue, directing the superior court to vacate its February 23, 2022 sanction order and to reconsider its ruling.  The stay of proceedings issued by this court on March 25, 2022, is hereby lifted.

Petitioner shall recover its costs.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)

Petitioner is directed to prepare and have a writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proofs of service on all parties.

CERTIFIED FOR PUBLICATION


McKINSTER_____
                                                                                              J.

I concur:



RAMIREZ_____
                          P. J.

43

[*Victor Valley High School v. Superior Court*, E078673]

RAPHAEL, J., Dissenting.

A 14-year-old special-needs student alleges in this lawsuit that he was sexually assaulted by other students in a school bathroom. Investigating before the lawsuit, school officials viewed a monitoring camera video, taken from outside the bathroom that day, that showed employees had violated a school policy of permitting only one student at a time in the bathroom by letting two boys in with the plaintiff. The district allowed the video to be overwritten a couple of weeks after the incident, so it no longer exists. Unlike the majority, I conclude that the trial court correctly found that school officials had a duty to preserve the video because litigation about the sexual assault crime was reasonably foreseeable when the district neglected to preserve it. I therefore respectfully dissent from today's holding.

I

On March 8, 2018, a special education teacher reported to an assistant principal employed by Victor Valley Union High School District (the defendant and petitioner) that students were discussing John Doe (the plaintiff and real party in interest) and another student engaging in a sex act in the cafeteria restroom the previous day. At that time, the school had a policy where a student needing to use the locked lunch restroom would "notify the instructional assistant" who would "open the door for the student and let them in one at a time."

By the next school day, the assistant principal, Rafael Navarro, reviewed videos from school monitoring cameras with a security official and wrote a report about one

1

from March 7. That video showed that Doe and another boy entered the restroom together as another boy exited, and then an instructional aide let a third boy into the bathroom. Navarro reviewed the video again when he discussed it with the principal.

Navarro testified that he assumed that the security official had saved the video, as they typically recorded such incidents. Navarro discovered, however, that the video was overwritten by new footage after about two weeks.

Doe filed a motion for terminating, issue, and evidentiary sanctions due to the loss of the video, claiming various ways his case was harmed, including identifying the students involved; "the location of individuals charged with supervising the special education students"; "which student or students instigated the activity"; and whether "coercion or force" was used to lure Doe into the bathroom.

The trial court found that the District knew "as early as March 9, 2018—the day Doe's parents were notified of the incident—that it was reasonably foreseeable the incident might result in litigation because of the School's special duty to Doe." At that time, the district "should have known the video would be relevant to that potential future litigation." Because of the statute of limitations, the district "would have known within six months" if Doe or his parents would sue, and preserving the video "would not have been burdensome." To address the district's "negligent failure to preserve important evidence," the court applied significant issue and evidentiary sanctions against it.

Our Code of Civil Procedure has no section addressing a duty to preserve evidence where a lawsuit has not yet been filed, and our Supreme Court has never articulated a standard for judicial consideration of such a duty as the basis for civil sanctions.

Under federal law, however, the duty to preserve evidence applies "when a party reasonably should know that the evidence may be relevant to anticipated litigation." (*Silvestri v. General Motors Corp.* (4th Cir. 2001) 271 F.3d 583, 591.) The majority adopts the federal test as California law and holds that the trial court applied "the correct legal standard of reasonable foreseeability." (Maj. opn., *ante*, at p. 33.)

The majority also identifies case law that usefully explains what it means for litigation to be reasonably foreseeable. In particular, the majority cites a test for foreseeability our Supreme Court applied in another context: "'foreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful person would take account of it in guiding practical conduct.'" (Maj. opn., *ante*, at p. 27 [cleaned up] [quoting *Kesner v. Superior Ct.* (2016) 1 Cal.5th 1132, 1145 (*Kesner*)].)

The majority also applies a case stating that "no single bright line . . . definitively marks when litigation reasonably should be anticipated" and courts consider "a variety of factors" to determine the matter. (Maj. opn., *ante*, at p. 35 [quoting *Bistrian v. Levi* (E.D. Pa. 2020) 448 F. Supp. 3d 454, 468].) The question is when the evidence "might be relevant to a reasonably-defined future litigation" and a court "'must be guided by the

particular facts of each case.'"  (Maj. opn., *ante*, at p. 35 [quoting *Zbylski v. Douglas County School District* (D. Colo. 2015) 154 F. Supp. 3d 1146, 1164].)[1]

I agree with the majority on this much and join its conclusion that the trial court applied the correct legal standard when it determined that the school district had a duty to preserve the video containing evidence bearing on the alleged bathroom assault.

III

As the trial court applied the correct standard, the majority recognizes that its duty "'begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination'" of the trial court.  (Maj. opn., *ante*, at p. 9 [quoting *Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 390-391].)  Despite that highly deferential test, the majority holds that no substantial evidence supports the trial court's finding that litigation was reasonably foreseeable.  (Maj. opn., *ante*, at pp. 33-40.)

Contrary to the majority, I would conclude that ample evidence supports the trial court.  In general, a "reasonably thoughtful" school official "'"in the setting of modern life"'" would consider the possibility of litigation when aware of evidence bearing on whether and how a child's sexual assault in a school bathroom occurred.  (*Kesner*, *supra*,

---

[1] Though employing these expressive descriptions of the "reasonably foreseeable" test, the majority insists upon the unenlightening "gloss" that reasonably foreseeable means "probable or likely."  (Maj. opn., *ante*, at p. 27.)  Probable, in this context, simply "has been held to mean 'more than a possibility.'"  (*In re Napster, Inc. Copyright Litig.* (N.D. Cal. 2006) 462 F.Supp.2d 1060, 1068; *RealNetworks, Inc. v. DVD Copy Control Assn, Inc.* (N.D. Cal. 2009) 264 F.R.D. 517, 524 ["The future litigation must be 'probable,' which has been held to mean 'more than a possibility'"].)  The tests quoted in the text above are more informative.

4

1 Cal.5th at pp. 1144-1145.) School officials cannot not be expected to know detailed legal requirements. But they are professionals trained for their positions, receive communications within their industry, and are accountable to a school board for protecting public interests. Upon learning of a child's sexual assault at school, reasonable administrators would consider that the matter might end up in court.

Our Supreme Court recognized in 1970 that school districts can be liable for student-on-student assaults through a tort action for negligently supervising the children. (*Dailey v. Los Angeles School District* (1970) 2 Cal.3d 741, 749-751.) The court later recognized that "a school district and its employees have a special relationship with the district's pupils" imposing duties "beyond what each person generally owes others." (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 869-870 .) That "duty of care owed by school personnel" includes an obligation to take "reasonable measures to protect students from foreseeable injury at the hands of third parties acting negligently or intentionally." (*Id.* at p. 870.) The failure to take such measures thus leads to "cases of employees' alleged negligence resulting in injury to a student by another student." (*Ibid*.) School districts thus can face lawsuits that allege student sexual assaults resulted from school personnel's failure to adequately supervise student perpetrators. (See *J.H. v. Los Angeles Unified School Dist.* (2010) 183 Cal.App.4th 123 [liability for negligent supervision in student-on-student sexual assault and battery]; *Jennifer C. v. Los Angeles Unified School District* (2008) 168 Cal.App.4th 1320 [liability for negligent supervision in sexual assault on special needs student in an alcove].) Some federal courts

in other states have found litigation reasonably foreseeable to school officials simply because a student has been sexually assaulted.[2]

In California, this matter has been spotlighted for school leaders, as teachers and administrators are "mandated reporters" of child sexual assault (among other types of abuse), subject to misdemeanor prosecution if they do not within 36 hours report the assault to the police, sheriff, or county welfare department.  (Pen. Code §§ 11165.1, 11165.7, 11165.9, 11166.)  The Department of Justice has developed a form (Form SS 8572) for the mandated reports, and local law enforcement is required to investigate a mandated report.  (Pen. Code §§ 11165.14, 11166, subd. (d)(3)(C), 11169.)[3]  School

---

[2]  See *Doe v. Fairfax County School Board* (E.D. Va. June 28, 2019, No. 1:18-cv-00614-LO-MSN) [2019 U.S. Dist.LEXIS 231371, *14] ["duty to preserve started on [the date] when Oakton administrators were informed of a potential sexual assault" by a student telling persons who communicated to school officials]; *Zbylski v. Douglas County School District* (D. Colo. 2015) 154 F.Supp.3d 1146, 1164 (*Zbylski*) ["duty to preserve was triggered no later than [the date] when the School District placed [a teacher] on administrative leave" due to concerns about inappropriate conduct with children].
The majority distinguishes *Zbylski* partly by "assum[ing] without deciding" that teacher sexual assaults result in litigation more often than student-on-student ones.  (Maj. opn., *ante*, at p. 36, fn.16.)  That method purportedly distinguishes the case whether or not the assumed fact is incorrect.  Litigation in the two situations, however, is similar in that each requires negligence by school employees apart from the perpetrator's actions.  A teacher's abuse of a student falls "outside the scope of her employment," so a plaintiff cannot base a claim against a district directly on the acts but instead must base it on the negligence of personnel who knew, or should have known, of the employee's propensities but "nevertheless hired, retained, and inadequately supervised her."  (*C.A. v. William S. Hart Union High School Dist.*, *supra*, 53 Cal.4th 861 at p. 865.)  Contrary to the majority, I would assume that with equivalent evidence of school officials' negligence in supervising a person, a lawsuit is equally likely whether a sexual assault perpetrator is a teacher or student.

[3]  The district here had previously provided video of incidents to law enforcement, but the police did not request the video in this case until after it had been overwritten.

districts must provide annual training to mandated reporters, through an online training module developed by the state Department of Social Services or a substitute for it. (Ed. Code § 44691.)[4] District officials would thus know that sexual battery means mandatory expulsion for a student perpetrator, giving the accused student a right to an administrative hearing and a court challenge to it. (See *M.N. v. Morgan Hill Unified School Dist.* (2018) 20 Cal.App.5th 607, 611, 621, fn. 9; Ed. Code §§ 48900, 48918.)

From these laws and this training, school officials would know that the video could be relevant to civil litigation; to a criminal or juvenile court proceeding; or to expulsion litigation against the alleged perpetrator. This cumulation makes it obvious that evidence about whether a sexual assault occurred and who is responsible should be preserved for litigation, such that a reasonable administrator would not need to parse out the precise likelihood of a particular claim in determining whether to preserve the video. The majority recognizes that some types of incidents "predictably result in litigation," such as "slip and fall accidents." (Maj. opn., *ante*, at p. 37.) A sexual assault of a student at school is such an incident. Reasonably thoughtful people whose profession is to govern schools, charged with a special duty of care, would consider the possibility of litigation when they possess evidence about a sexual assault of a student in their keeping.

Beyond the general and obvious need to preserve evidence of student sexual assaults, however, evidence in our record about *this* sexual assault provides two

---

[4] At present, the mandated reporting website associated with the State Department of Social Services contains a four-hour general training that is a required precursor for a three-hour training for school personnel. (See <https://mandatedreporterca.com/> [accessed Dec. 19, 2022].)

7

compelling justifications for the trial court's determination that litigation was reasonably foreseeable once the school district reviewed the video.

First, school officials would have realized that the video may contain evidence of the district's own negligence. The vice principal, Navarro, reviewed the video at least twice and observed evidence that supervisors failed to enforce the rule that they were to unlock the bathroom for only one student at a time, as two boys ended up inside with Doe. The school district was thereby aware that the incident may have resulted in part from a violation of a student-safety procedure by its employees. (See, e.g., *Jimenez v. Roseville City School Dist.* (2016) 247 Cal.App.4th 594, 602 [reversing grant of summary judgment in a negligent supervision case, in part because the "[d]istrict did not take adequate steps to disseminate and enforce" a policy increased the risk to students].) Such a rule violation would be glaring to a reasonable school administrator, even without legal training, and it distinguishes this case from some other event that the district would have no reason to think might serve as the basis for a negligent supervision lawsuit.

Second, the district recognized that it should act to obtain and preserve information about this sexual assault for future litigation, and it did so. According to a declaration from the district's risk manager, who received Navarro's report of the video shortly after it was drafted, and who works with school administrators and attorneys, the district "instructed me and other employees of the District to obtain confidential statements and reports immediately after an incident" such as the sexual assault "and forward them to my department." This was done so that, when a claim is later filed against the district, "I then forward those statements and reports to any adjuster

8

administering a potential claim and/or to attorneys assigned to assist the District in defending litigation." Indeed, at the district's urging, the trial court found that Navarro's unredacted report of the incident was subject to attorney-client privilege because "the dominant purpose of the report is to communicate to attorneys the nature of the incident," where the district asserted that the "report was, in fact, prepared in order to communicate with defense counsel effectively." The trial court's determination that litigation about the sexual assault was reasonably foreseeable when Navarro reviewed the video is supported by the district's having acted at that time to prepare and preserve for litigation Navarro's report about the video.[5] That is, the conclusion that litigation was foreseeable to the district is supported because the district actually prepared for it.[6]

Today's opinion finds no duty to preserve evidence for litigation where all indications are that the district acted in accordance with a belief that there was a

---

[5] The district claims that its invocation of attorney-client privilege over Navarro's report "at best, indicates the mere distant possibility of litigation" when drafted, which it views as insufficient to trigger a duty to preserve evidence. District employees surely would provide evidence to the risk manager in situations where a skilled lawyer would deem the possibility of litigation "distant," as well as those where a lawsuit would be more certain. But adopting the district's view here means that litigation can be foreseeable enough that a party can choose to preserve as privileged some evidence in case of litigation (Navarro's report of the video), but not foreseeable enough to create a duty to preserve similar evidence about the same matter (the video itself). At the least, under our deferential review standard, the privilege invocation provides substantial evidence in support of the trial court's determination that litigation was reasonably foreseeable.

[6] It should be of no moment that the district did not receive notification of a lawsuit until well after the video was lost. One thing that is *not* foreseeable is that Doe's parents—presumably concerned with dealing with a child who had been sexually assaulted, finding out the facts, and perhaps proceeding to consult a lawyer—would threaten a lawsuit within the fourteen days before the video was overwritten.

9

reasonable probability of litigation. The district had an established policy of preserving documentary evidence for litigation through its risk manager, and it preserved that evidence here when Navarro created and shared a written report about the video. Reflecting that intention to maintain evidence, Navarro assumed that video had been preserved by the security official who reviewed it with him, but it was not saved due to a "misunderstanding." This simple mistake should simply burden the district with sanctions meant to compensate the plaintiff at trial for the loss of the video. Instead, it saddles the state with today's unfortunate holding that a school district has no duty to preserve evidence that may bear on whether a sexual assault of a student was committed, how, and by whom — even when the evidence appeared to indicate the district bore some responsibility for the assault, and even when the district actually preserved some evidence about it for possible future litigation.

IV

The "safe harbor" provision found in Code of Civil Procedure section 2031.060 would sometimes prohibit sanctions for the failure to produce electronically stored information (ESI). But it has no bearing on the issue before us.

The provision prohibits sanctions for ESI "that has been lost, damaged, altered, or overwritten as the result of the routine, good faith operation of an electronic information system." (§ 2031.060, subd. (i)(1).) The safe harbor provision, however, "shall not be construed to alter any obligation to preserve discoverable information." (§ 2031.060, subd. (i)(2).) Here, *before* the video was overwritten, the school identified it, reviewed it, and determined that it contained content relevant to the district's civil liability for

10

negligently supervising students.  At that time, there was a duty to preserve it for reasonably foreseeable litigation, just as there might be to preserve (for example) a piece of physical evidence that might indicate an assault occurred, such as an item of clothing. Nothing about the nature of ESI made preserving the video onerous.  A person just had to "save" the video.  The video was lost because of that failure to save it, not as the result of the district's electronic system.  Had the video been downloaded into an electronic file, it would have been preserved even if routine video overwriting continued regularly at the school.

Cases have held even more broadly that a party must *suspend* the routine destruction of electronic evidence when litigation is foreseeable.  "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and . . . ensure the preservation of relevant documents." (*Zubulake v. UBS Warburg LLC* (S.D.N.Y. 2003) 220 F.R.D. 212, 218; see *Apple Inc. v. Samsung Elecs. Co., Ltd.* (N.D. Cal. 2012) 881 F.Supp.2d 1132, 1146-1147 [adverse inference jury instruction was appropriate when the defendant kept an auto-delete email policy in place even though litigation was reasonably foreseeable]; *Zubulake v. UBS Warburg LLC*, *supra*, 220 F.R.D. at p. 218 ["Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents"]).  As the legislative history of the safe harbor provision recognized, "this provision would not otherwise relieve parties of their obligations to preserve discoverable information. When a party is under a duty to preserve information because of pending or reasonably

11

anticipated litigation, a party would still be required to modify or suspend features of the routine operation of a computer system to prevent loss of information." (Sen. Judiciary Comm., Bill Analysis dated 4/30/12, SB 1574 (2011-2012) Leg. Session.) This case presents an even stronger case for preserving evidence. The district's routine overwriting of video did not have to be suspended; the district simply had to save a particular video it had identified.

The safe harbor provision might protect the school district where, acting in good faith, it did not identify ESI before it was overwritten. The situation we have, though, is a piece of identified evidence in the hands of school officials that should have been copied or downloaded, as the vice principal in fact intended.

V

The vexing question here, in my view, is identified in the last section of the majority opinion. (Maj. opn., *ante*, at pp. 40-42.) What sanctions are appropriate where a school has negligently failed to preserve, rather than intentionally destroyed, evidence like the video here?

As discussed above, I would hold that the trial court properly found that sanctions applied. Having decided that issue differently than the majority, I would grant the petition to order the trial court to reconsider the heavy-handed sanctions to craft them as primarily curative rather than punitive. (See Fed. R. Evid., rule 37(e)(1) [failure to take reasonable steps to preserve information requires "measures no greater than necessary to cure the prejudice"]; Fed. R. Evid., rule 37 advisory committee's note ["curative measures" should not be so severe as would be ordered for intentional destruction];

12

*Silvestri v. General Motors Corp.*, *supra*, 271 F.3d at p. 590 [sanctions for lost evidence should be molded to reflect prophylactic, punitive, and remedial purposes].)

That the school district here received harsh sanctions where it meant to preserve the video (but accidentally did not) obscures the potentially pernicious effect of today's holding. Had the Victor Valley Union High School District—realizing that it might bear some culpability for a child's sexual assault in the bathroom—decided to erase the video and shred memos about it, the majority's holding means that no sanctions could be imposed for that destruction. Today's opinion appears less ignominious because the school district, responsibly, intended to preserve the video. Where we hold there is no duty to preserve evidence about a school sexual assault, though, that means that there is nothing wrong with a less-responsible entity destroying it.

RAPHAEL         
J.